# EXHIBIT 1



# Notice of Service of Process

**null / ALL**
**Transmittal Number: 32863496**
**Date Processed: 12/09/2025**

| | |
|---|---|
| **Primary Contact:** | Sheryl Arneson<br>3M Company<br>3M Center<br>Bldg 220-9E-02 220-10W/F06<br>Saint Paul, MN 55144-1000 |

| | |
|---|---|
| **Electronic copy provided to:** | Canhnha Luu |

| | |
|---|---|
| **Entity:** | 3M Company<br>Entity ID Number  3571748 |
| **Entity Served:** | 3M Company |
| **Title of Action:** | City Of Fresno vs. 3M Company |
| **Matter Name/ID:** | City Of Fresno vs. 3M Company (18312368) |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Product Liability |
| **Court/Agency:** | Fresno County Superior Court, CA |
| **Case/Reference No:** | 25CECG05176 |
| **Jurisdiction Served:** | California |
| **Date Served on CSC:** | 12/09/2025 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | Miller & Axline<br>916-488-6688 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

E-FILED
11/17/2025
Superior Court of California
County of Fresno
By: A. Hoffman, Deputy

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
3M COMPANY; A BRITE COMPANY, INC.; ASTERION, LLC; ATOTECH USA, LLC; B&T CUSTOM POLISHING; (Additional Parties Attachment form is attached)

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
CITY OF FRESNO

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: *(El nombre y dirección de la corte es):* FRESNO COUNTY SUPERIOR COURT | **CASE NUMBER:** *(Número del Caso):* 25CECG05176 |
|---|---|

1130 O Street, Fresno, CA 93721

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Justin Massey; MILLER & AXLINE; 1050 Fulton Avenue, Ste. 100, Sacramento, CA 95825; 916-488-6688

DATE: ~~October 31, 2025~~  11/17/2025
*(Fecha)*

Clerk, by _____ , Deputy
*(Secretario)* A. Hoffman *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons *(form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* 3M COMPANY

   under: ☒ CCP 416.10 (corporation)     ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)    ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

| Form Adopted for Mandatory Use Judicial Council of California SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465 *www.courts.ca.gov* |
|---|---|---|

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| CITY OF FRESNO v. 3M COMPANY, ET AL. | 25CECG05176 |

## INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties (Check only one box. Use a separate page for each type of party.):

☐ Plaintiff    ☒ Defendant    ☐ Cross-Complainant    ☐ Cross-Defendant

BENCHMARK PRODUCTS, INC.; BLAST TECH BECAUSE RUST NEVER SLEEPS; CALIFORNIA CHROME, LLC; CALIFORNIA NATURAL COLOR; CHEMITHON SURFACE FINISHING, INC.; CLOVIS SPECIALTY PLATING; COMMERCIAL ELECTRO PLATING, INC.; CORTEVA, INC.; DUBOIS CHEMICALS, INC.; DUPONT DE NEMOURS, INC.; EIDP, INC.; E. I. DU PONT DE NEMOURS AND COMPANY; E. & J. GALLO WINERY; FMC CORPORATION; FRESNO CHROME PLATING, INC.; HUNTER CHEMICAL CORPORATION; HUNTER CHEMICAL, LLC; KING INDUSTRIAL HARD CHROME, INC.; MACDERMID ENTHONE INC.; MECLEC, INC.; MECLEC METAL FINISHING, INC.; MISSION LINEN SUPPLY; NEW AGE METAL FINISHING, LLC; PACIFIC COAST ANODIZING, INC.; PAVCO INC.; PLATING PROCESS SYSTEMS, INC.; PROCOM, L.L.C.; RUTTER ARMEY, INC.; SANDENVENDO AMERICA, INC.; SOEX WEST TEXTILE RECYCLING USA, LLC; SURTEC, INC.; TANK CONSTRUCTION AND ENGINEERING, INC.; TARVER COATINGS, INC.; TEMPEST TECHNOLOGY CORPORATION; THE CHEMOURS COMPANY; THE CHEMOURS COMPANY FC, LLC; UNIVAR SOLUTIONS USA, LLC; VALLEY CHROME PLATING, INC.; VALLEY METAL FINISHING, INC.; WESTERN CHROME, LTD.; and DOES 1 through 300, inclusive.

Page ___1___ of ___1___

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

Justin Massey, SBN 229697
Michael Axline, SBN 229840
Daniel Boone, SBN 148841
Brandon Moore, SBN 353400
jmassey@milleraxline.com
MILLER & AXLINE
1050 Fulton Avenue, Suite 100
Sacramento, CA 95825
Telephone: (916) 488-6688

Attorneys for Plaintiff City of Fresno

Exempt from filing fees
per Govt. Code, § 6103

E-FILED
11/3/2025 12:20 PM
Superior Court of California
County of Fresno
By: A. Hoffman, Deputy

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
## FOR THE COUNTY OF FRESNO

CITY OF FRESNO,

Plaintiff,

v.

3M COMPANY;
A BRITE COMPANY, INC.;
ASTERION, LLC;
ATOTECH USA, LLC;
B&T CUSTOM POLISHING;
BENCHMARK PRODUCTS, INC.;
BLAST TECH BECAUSE RUST NEVER SLEEPS;
CALIFORNIA CHROME, LLC;
CALIFORNIA NATURAL COLOR;
CHEMITHON SURFACE FINISHING, INC.;
CLOVIS SPECIALTY PLATING;
COMMERCIAL ELECTRO PLATING, INC.;
CORTEVA, INC.;
DUBOIS CHEMICALS, INC.;
DUPONT DE NEMOURS, INC.;
EIDP, INC.;
E. I. DU PONT DE NEMOURS AND COMPANY;
E. & J. GALLO WINERY;
FMC CORPORATION;
FRESNO CHROME PLATING, INC.;
HUNTER CHEMICAL CORPORATION;
HUNTER CHEMICAL, LLC;
KING INDUSTRIAL HARD CHROME, INC.;
MACDERMID ENTHONE INC.;
MECLEC, INC.;
MECLEC METAL FINISHING, INC.;
MISSION LINEN SUPPLY;

Case No.   25CECG05176

**COMPLAINT FOR DAMAGES AND OTHER RELIEF (NON-AFFF PFAS CONTAMINATION):**

(1) **STRICT PRODUCTS LIABILITY;**
(2) **HSAA;**
(3) **DECLARATORY RELIEF;**
(4) **NEGLIGENCE;**
(5) **NUISANCE;**
(6) **TRESPASS;**
(7) **FRAUDULENT/VOIDABLE TRANSFER;**

**REQUEST FOR JURY TRIAL**

COMPLAINT FOR DAMAGES AND OTHER RELIEF (NON-AFFF);
REQUEST FOR JURY TRIAL

NEW AGE METAL FINISHING, LLC;
PACIFIC COAST ANODIZING, INC.;
PAVCO INC.;
PLATING PROCESS SYSTEMS, INC.;
PROCOM, L.L.C.;
RUTTER ARMEY, INC.;
SANDENVENDO AMERICA, INC.;
SOEX WEST TEXTILE RECYCLING USA, LLC;
SURTEC, INC.;
TANK CONSTRUCTION AND ENGINEERING, INC.;
TARVER COATINGS, INC.;
TEMPEST TECHNOLOGY CORPORATION;
THE CHEMOURS COMPANY;
THE CHEMOURS COMPANY FC, LLC;
UNIVAR SOLUTIONS USA, LLC;
VALLEY CHROME PLATING, INC.;
VALLEY METAL FINISHING, INC.;
WESTERN CHROME, LTD.;
and DOES 1 through 300, inclusive,

Defendants.

COMPLAINT FOR DAMAGES AND OTHER RELIEF (NON-AFFF);
REQUEST FOR JURY TRIAL

## INTRODUCTION

1.      Plaintiff City of Fresno ("Plaintiff" or the "City") provides drinking water to approximately 142,200 residential, commercial, and industrial customers in Fresno, California. The City brings this action to protect human health or the environment, comply with regulatory standards, or otherwise respond to perfluoroalkyl and polyfluoroalkyl substances ("PFAS") in soil, water (surface water, groundwater, or drinking water wells), or other City property.

2.      The City also seeks abatement of the continuing nuisance and trespass caused by Defendants' PFAS and all other appropriate remedies to ensure Defendants' PFAS do not threaten human health, the environment, or the City's compliance with regulatory standards.

3.      The costs sought in this Complaint do not include costs to respond to PFAS contamination from Aqueous Film-Forming Foam ("AFFF"). On information and belief, in the areas relevant to this action non-AFFF PFAS is separable from AFFF PFAS.

4.      As used in this Complaint, "or" includes "and" and vice-versa.

## PFAS

5.      PFAS, as used in this Complaint, includes all perfluoroalkyl and polyfluoroalkyl substances identified as PFAS by the U.S. Environmental Protection Agency ("USEPA") and the State of California, including the salts, ionic states, and acid forms of PFAS molecules, and their precursors and transformation products. The City does not seek relief in this action for AFFF PFAS, but no type of PFAS is excluded simply because it is also found in AFFF. Plaintiff seeks to recover costs of responding to all types of non-AFFF PFAS.

6.      PFAS are chemical compounds that do not occur naturally, and that feature synthetic carbon-fluorine bonds. The PFAS carbon-fluorine bond is one of the strongest in chemistry and is responsible for the non-stick, stain-repellent, and other marketed qualities of PFAS products, but the carbon-fluorine bond is also responsible for qualities that make PFAS a threat to human health and the environment, including persistence in the environment. PFAS compounds commonly found in the environment include the following:

a. Perfluorooctanoic acid ("PFOA");

1

COMPLAINT FOR DAMAGES AND OTHER RELIEF (NON-AFFF);
REQUEST FOR JURY TRIAL

b. perfluorooctanesulfonic acid ("PFOS");

c. perfluorononanoic acid ("PFNA"),;

d. perfluorohexanesulfonic acid ("PFHxS");

e. the ammonium salt of hexafluoropropylene oxide dimer acid (HFPO-DA) (a/k/a "GenX Chemicals");

f. perfluoroheptanoic acid ("PFHpA"); and

g. perfluorobutanesulfonic acid ("PFBS").

7. PFAS compounds are "hazardous substances" within the meaning of California Health & Safety Code section 78075.

8. Defendants designed, manufactured, marketed, distributed, stored, sold, used, or disposed of PFAS or products containing PFAS ("PFAS products") that have been released or threatened to be released or caused PFAS contamination in or around the City.

9. PFAS are found in non-AFFF products including non-stick cookware; water and stain-repellent clothing; upholstery and carpeting; disposable containers; packaging and packaging coatings; cement; concrete; cleaning supplies; waterproof or corrosion resistant coatings for roofing, construction, agriculture, and other industries; marine and specialty paints; polyethylene film; Freon refrigerant; and plastic bags. PFAS products have also been used in or around the City for metal stripping, cleaning, plating, or finishing; painting; fabrication; foam insulation injection; and, on information and belief, other applications.

10. PFAS enters the environment from the manufacture, distribution, storage, sale, use, or disposal of PFAS or PFAS products, including industrial releases.

11. PFAS are commonly referred to as "forever chemicals." PFAS compounds dissolve easily in water, are able to move long distances though soil and groundwater, and resist biodegradation and remediation. High retention and downward movement through soils make PFAS a common, long-term source of groundwater contamination.

12. PFAS compounds render drinking water non-potable and require significant cost to remove from soil, water, or other City property to protect human health or the environment or

2

COMPLAINT FOR DAMAGES AND OTHER RELIEF (NON-AFFF);
REQUEST FOR JURY TRIAL

comply with regulatory standards. PFAS has contaminated soil, water, or other City property.

13.     PFAS compounds threaten human health, even at low levels (measured in parts per trillion). Exposure results in bioaccumulation of PFAS within the human body. PFAS can also biomagnify, meaning concentrations increase as exposure increases.

14.     PFAS exposure through contaminated food or drinking water is linked to adverse health effects including kidney and testicular cancer, thyroid disorders, elevated cholesterol and liver enzymes, pregnancy-induced hypertension, preeclampsia, and decreased vaccine response.

15.     Due in part to the risks to human health or the environment from bioaccumulation and biomagnification, the USEPA and State of California regulate PFAS in drinking water.

16.     The USEPA has adopted Maximum Contaminant Level Goals ("MCLG") and Maximum Contaminant Levels ("MCL") for PFAS in drinking water as follows:

| PFAS Compound | MCLG (parts per trillion) ("ppt") | MCL (ppt) |
|---|---|---|
| PFOA | 0 | 4 |
| PFOS | 0 | 4 |
| PFHxS | 10 | 10 |
| PFNA | 10 | 10 |
| GenX Chemicals | 10 | 10 |

17.     The USEPA has adopted an MCLG and MCL for mixtures of any two or more of PFHxS, PFNA, GenX Chemicals, or PFBS, creating a Hazard Index that is unitless and calculated from the measured concentration and toxicity of each compound, as follows:

| PFAS Compounds | MCLG (unitless) | MCL (unitless) |
|---|---|---|
| Mixtures of any two or more of PFHxS, PFNA, GenX Chemicals, or PFBS | 1 | 1 |

18.     The State has adopted PFAS drinking water regulations as follows:

| PFAS Compound | Public Health Goal ("PHG") (ppt) | Notification Level ("NL") (ppt) | Response Level ("RL") (ppt) |
|---|---|---|---|
| PFOA | 0.007 | 4 | 10 |
| PFOS | 1 | 4 | 40 |
| PFBS | - | 500 | 5,000 |
| PFHxS | - | 3 | 10 |
| PFHxA | - | 1,000 | 10,000 |

COMPLAINT FOR DAMAGES AND OTHER RELIEF (NON-AFFF);
REQUEST FOR JURY TRIAL

**PLAINTIFF**

19.     Plaintiff City of Fresno is a municipal corporation and charter city in the State of California.

**DEFENDANTS**

20.     "PFAS Manufacturer Defendants," which include 3M Company ("3M") and E.I. DuPont de Nemours and Company, EIDP, Inc., DuPont de Nemours, Inc., The Chemours Company, The Chemours Company FC, LLC, and Corteva, Inc. (collectively, the "DuPont Defendants"), knew PFAS or PFAS products threatened human health or the environment, but misled the public and government agencies about the threat while designing, manufacturing, marketing, storing, selling, using, or disposing of PFAS or PFAS products. PFAS Manufacturer Defendants engaged in that conduct despite the availability of reasonable alternatives and actual or constructive knowledge that actual or threatened contamination would result.

21.     PFAS Manufacturer Defendants are strictly liable for and caused PFAS contamination of soil, water, or other City property by intentionally, recklessly, or negligently designing, manufacturing, marketing, distributing, storing, selling, using, or disposing of PFAS or PFAS products that have been or are threatened to be released in or around the City.

22.     PFAS Manufacturer Defendants knew or should have known the design, manufacture, marketing, distribution, storage, sale, use, or disposal of PFAS or PFAS products would be injurious to health, indecent or offensive to the senses, or obstruct the free use of soil, water, or other City property so as to interfere with the comfortable enjoyment of life or property.

23.     Defendants have caused, contributed to, maintained, or participated in a continuing nuisance that has caused or threatens to cause special injury to the City. Defendants' PFAS is spreading, causing new contamination in new locations in and around the City.

24.     As a direct and proximate result of Defendants' acts or omissions, soil, water, or other City property is contaminated or threatened to be contaminated with PFAS. The City has incurred, is incurring, or will incur damages or costs to respond to Defendants' PFAS, including

4

costs that are "necessary" and "consistent with" the National Oil and Hazardous Substances Pollution Contingency Plan ("NCP"), for which Defendants are strictly, jointly, and severally liable, including all costs to respond to PFAS in soil, water, other City property, or the environment in or around the City.

25.    The City seeks damages equivalent to the costs of responding to Defendants' PFAS, punitive damages for the PFAS Manufacturer Defendants' malicious conduct, injunctive relief requiring Defendants to remediate soil, water, or other City property, injunctive relief requiring Defendants to prevent further PFAS contamination, and all other appropriate relief.

**PFAS Manufacturer Defendants**

26.    PFAS Manufacturer Defendants designed, manufactured, marketed, distributed, stored, sold, used, or disposed of PFAS or PFAS products they knew or should have known would cause actual or threatened contamination of soil, water, or other City property.

27.    Defendant 3M is a Delaware corporation with its principal place of business in St. Paul, Minnesota. On information and belief, the City alleges the following: 3M conducts business in the United States, is registered to do business in California, has done business in California during the time of the acts or omissions giving rise to this Complaint, and designed, manufactured, marketed, distributed, stored, sold, used, or disposed of PFAS or PFAS products that have caused or will cause actual or threatened releases of PFAS to soil, water, or other City property.

28.    Defendant A Brite Company, Inc. ("ABC") is a Texas corporation with its principal place of business in Garland, Texas. On information and belief, the City alleges the following: ABC conducts business throughout the United States, has done business in California during the time of the acts or omissions giving rise to this Complaint, and designed, manufactured, marketed, distributed, stored, sold, used, or disposed of PFAS or PFAS products that have caused or will cause actual or threatened releases of PFAS to soil, water, or other City property.

29.    Defendant Asterion, LLC was an Indiana limited liability company with its

5

COMPLAINT FOR DAMAGES AND OTHER RELIEF (NON-AFFF);
REQUEST FOR JURY TRIAL

principal place of business in Indianapolis, Indiana. On information and belief, the City alleges the following: Asterion conducted business throughout the United States, did business in California during the time of the acts or omissions giving rise to this Complaint, and designed, manufactured, marketed, distributed, stored, sold, used, or disposed of PFAS or PFAS products that have caused or will cause actual or threatened releases of PFAS to soil, water, or other City property.

30.    Defendant Atotech USA, LLC ("Atotech") is a Delaware limited liability company with its principal office in Rock Hill, South Carolina. On information and belief, the City alleges the following: Atotech conducts business in the United States, is registered to do business in California, has done business in California during the time of the acts or omissions giving rise to this Complaint, and designed, manufactured, marketed, distributed, stored, sold, used, or disposed of PFAS or PFAS products that have caused or will cause actual or threatened releases of PFAS to soil, water, or other City property.

31.    Defendant Benchmark Products, Inc. ("Benchmark") was an Indiana corporation with its principal place of business in Indianapolis, Indiana. On information and belief, the City alleges the following: Benchmark conducted business throughout the United States, did business in California during the time of the acts or omissions giving rise to this Complaint, and designed, manufactured, marketed, distributed, stored, sold, used, or disposed of PFAS or PFAS products that have caused or will cause actual or threatened releases of PFAS to soil, water, or other City property.

32.    Defendant Chemithon Surface Finishing, Inc. ("Chemithon") is a Washington corporation with its principal place of business in Seattle, Washington. On information and belief, the City alleges the following: Chemithon conducts business throughout the United States, was registered to do business in California, has done business in California during the time of the acts or omissions giving rise to this Complaint, and designed, manufactured, marketed, distributed, stored, sold, used, or disposed of PFAS or PFAS products that have caused or will cause actual or threatened releases of PFAS to soil, water, or other City property.

6

COMPLAINT FOR DAMAGES AND OTHER RELIEF (NON-AFFF);
REQUEST FOR JURY TRIAL

33.    Defendant DuBois Chemicals, Inc. is a Delaware corporation with its principal place of business in Sharonville, Ohio. On information and belief, the City alleges the following: DuBois Chemicals conducts business throughout the United States, is registered to do business in California, has done business in California during the time of the acts or omissions giving rise to this Complaint, and designed, manufactured, marketed, distributed, stored, sold, used, or disposed of PFAS or PFAS products that have caused or will cause actual or threatened releases of PFAS to soil, water, or other City property.

34.    The DuPont Defendants are related Delaware business entities. On information and belief, the City alleges the following: The DuPont Defendants conduct business in the United States, are registered to do business in California, have done business in California at the time of the acts or omissions giving rise to this Complaint, and designed, manufactured, marketed, distributed, stored, sold, used, or disposed of PFAS or PFAS products that have caused or will cause actual or threatened releases of PFAS to soil, water, or other City property.

(a)    Defendant E.I. du Pont de Nemours & Company is now known as EIDP, Inc. E.I. du Pont de Nemours & Company and EIDP, Inc. (collectively, "Old DuPont") are Delaware corporations with their principal places of business in Wilmington, Delaware.

(b)    Defendant The Chemours Company ("Chemours Co.") is a Delaware corporation with its principal place of business in Wilmington, Delaware.

(c)    Defendant The Chemours Company FC, LLC ("Chemours FC") is a Delaware limited liability company with its principal place of business in Wilmington, Delaware.

(d)    Defendant Corteva, Inc. ("Corteva") is a Delaware corporation with its principal place of business in Wilmington, Delaware.

(e)    Defendant Dupont de Nemours, Inc. ("New Dupont") was formerly known as DowDuPont, Inc. ("DowDuPont") and is a Delaware corporation with its principal place of business in Wilmington, Delaware.

(f)    On information and belief, the City alleges the following: Chemours Co. was incorporated in or about April 2015. From that time until in or about July 2015, Chemours

7

COMPLAINT FOR DAMAGES AND OTHER RELIEF (NON-AFFF);
REQUEST FOR JURY TRIAL

Co. was a wholly owned subsidiary of Old DuPont. Prior to July 2015, Old DuPont transferred its "performance chemicals" business (which included PFAS products) along with associated environmental liabilities, including those related to PFAS, to Chemours Co. Old DuPont knew Chemours Co. was undercapitalized and could not satisfy those liabilities. In or about July 2015, Old DuPont "spun off" Chemours Co. by distributing shares of Chemours Co. stock to Old DuPont shareholders. Since that transaction, Chemours Co. has operated as an independent public company. Among other acts or omissions, Old DuPont and Chemours Co. designed, manufactured, marketed, distributed, stored, sold, used, or disposed of PFAS.

(g)     On information and belief, the City alleges the following: In December 2015, Old DuPont and The Dow Chemical Company ("Old Dow") merged with subsidiaries of a new holding company, DowDuPont, Inc. ("DowDuPont"), making Old DuPont and Old Dow subsidiaries of DowDuPont. Old DuPont then transferred, either directly or indirectly, a substantial portion of Old DuPont's assets to DowDuPont.

(h)     On information and belief, the City alleges the following: Corteva was formed in or about February 2018. From that time until in or about June 2019, Corteva was a wholly owned subsidiary of DowDuPont. Prior to June 2019, DowDuPont consolidated its agricultural business line, with associated environmental liabilities, including those related to PFAS, into Old DuPont and then transferred Old DuPont to Corteva. DowDuPont knew Old DuPont and Corteva were undercapitalized and could not satisfy those liabilities. In or about June 2019, DowDuPont "spun off" Corteva by distributing shares of Corteva stock to DowDuPont shareholders. Following those transactions, Corteva became an independent public company and the direct parent of Old DuPont.

(i)     On information and belief, the City alleges the following: After Old DuPont and Old Dow were made subsidiaries of DowDuPont, DowDuPont formed a third subsidiary, New Dow, which became the parent of Old Dow. In or about April 2019, DowDuPont "spun off" New Dow by distributing shares of New Dow stock to DowDuPont shareholders. Following that transaction, New Dow became an independent public company.

COMPLAINT FOR DAMAGES AND OTHER RELIEF (NON-AFFF);
REQUEST FOR JURY TRIAL

(j)    On information and belief, the City alleges the following: In or about June 2019, after its divestment of Corteva and New Dow, DowDuPont changed its name to DuPont de Nemours, Inc. (a/k/a New DuPont). New DuPont retained assets in its "specialty products" business, as well as the financial assets and liabilities of Old DuPont, including liabilities related to PFAS, that were not assumed by Chemours Co., Corteva, or New Dow.

(k)    On information and belief, the City alleges the following: As a result of the transactions described above, New DuPont and New Dow hold most of the tangible assets formerly owned by Old DuPont, and New DuPont, Corteva, Old DuPont, and Chemours hold liabilities related to PFAS formerly held by Old DuPont.

(l)    On information and belief, the City alleges the following: New DuPont and Corteva plan additional transactions to divest assets to shareholders and profitable new entities created or controlled by New DuPont and Corteva while transferring PFAS liabilities to undercapitalized new entities, also created by New DuPont and Corteva, that cannot satisfy those liabilities. Such transactions may be the subject of amendments to this Complaint.

35.    Defendant FMC Corporation ("FMC") is a Delaware corporation registered to do business in California with its principal place of business in Philadelphia, Pennsylvania. On information and belief, the City alleges the following: FMC has operated a facility at 2501 South Sunland Avenue in Fresno from in or around 1959 to in or around 1992. FMC has used the facility to manufacture agriculture chemicals or products that contain PFAS or use PFAS in the production of the finished products. FMC has designed, manufactured, marketed, distributed, stored, sold, or disposed of PFAS or PFAS products that have been or are threatened to be released from the facility and have caused or will cause actual or threatened contamination of soil, water, or other City property.

36.    Defendant Hunter Chemical Corporation ("Hunter Chemical Corp.") is a Pennsylvania corporation with its principal place of business in Fort Washington, Pennsylvania. On information and belief, the City alleges the following: Hunter Chemical Corp. conducts business throughout the United States, has done business in California during the time of the acts

9

COMPLAINT FOR DAMAGES AND OTHER RELIEF (NON-AFFF);
REQUEST FOR JURY TRIAL

or omissions giving rise to this Complaint, and designed, manufactured, marketed, distributed, stored, sold, used, or disposed of PFAS or PFAS products that have caused or will cause actual or threatened releases of PFAS to soil, water, or other City property.

37. Defendant Hunter Chemical, LLC ("Hunter Chemical") is a Pennsylvania corporation with its principal place of business in Fort Washington, Pennsylvania. On information and belief, the City alleges the following: Hunter Chemical or its predecessors conduct business throughout the United States, have done business in California during the time of the acts or omissions giving rise to this Complaint, and designed, manufactured, marketed, distributed, stored, sold, used, or disposed of PFAS or PFAS products that have caused or will cause actual or threatened releases of PFAS to soil, water, or other City property.

38. Defendant Macdermid Enthone Inc. ("Macdermid") is a Delaware corporation with its principal place of business in Waterbury, Connecticut. On information and belief, the City alleges the following: Macdermid or its predecessors conduct business throughout the United States, are or were registered to do business in California, have done business in California during the time of the acts or omissions giving rise to this Complaint, and designed, manufactured, marketed, distributed, stored, sold, used, or disposed of PFAS or PFAS products that have caused or will cause actual or threatened releases of PFAS to soil, water, or other City property.

39. Defendant Pavco Inc. is an Ohio corporation with its principal place of business in Charlotte, North Carolina. On information and belief, the City alleges the following: Pavco conducts business throughout the United States, has done business in California during the time of the acts or omissions giving rise to this Complaint, and designed, manufactured, marketed, distributed, stored, sold, used, or disposed of PFAS or PFAS products that have caused or will cause actual or threatened releases of PFAS to soil, water, or other City property.

40. Defendant Plating Process Systems, Inc. ("PPS") is an Ohio corporation with its principal place of business in Mentor, Ohio. On information and belief, the City alleges the following: PPS conducts business throughout the United States, has done business in California

COMPLAINT FOR DAMAGES AND OTHER RELIEF (NON-AFFF);
REQUEST FOR JURY TRIAL

during the time of the acts or omissions giving rise to this Complaint, and designed, manufactured, marketed, distributed, stored, sold, used, or disposed of PFAS or PFAS products that have caused or will cause actual or threatened releases of PFAS to soil, water, or other City property.

41.    Defendant ProCom, L.L.C. ("ProCom") was an Indiana corporation with its principal office address in Incline Village, Nevada. On information and belief, the City alleges the following: ProCom conducted business throughout the United States, did business in California during the time of the acts or omissions giving rise to this Complaint, and designed, manufactured, marketed, distributed, stored, sold, used, or disposed of PFAS or PFAS products that have caused or will cause actual or threatened releases of PFAS to soil, water, or other City property.

42.    Defendant SurTec, Inc. is an Ohio corporation with its principal place of business in Brunswick, Ohio. On information and belief, the City alleges the following: SurTec or its predecessors conduct business throughout the United States, have done business in California during the time of the acts or omissions giving rise to this Complaint, and designed, manufactured, marketed, distributed, stored, sold, used, or disposed of PFAS or PFAS products that have caused or will cause actual or threatened releases of PFAS to soil, water, or other City property.

43.    The City is ignorant of the true names or capacities of additional PFAS Manufacturer Defendants sued herein under the fictitious names DOES 1 through 100, inclusive.

**PFAS Distributor Defendants**

44.    The City is ignorant of the true names or capacities of Defendants sued herein under the fictitious names DOES 101 through 200, inclusive, that marketed, distributed, stored, sold, used, or disposed of PFAS or PFAS products they knew or should have known would cause contamination of soil, water, or other City property ("PFAS Distributor Defendants").

**PFAS User Defendants**

45.    Defendant E. & J. Gallo Winery ("Gallo") is a California corporation. On

11

COMPLAINT FOR DAMAGES AND OTHER RELIEF (NON-AFFF);
REQUEST FOR JURY TRIAL

information and belief, the City alleges the following: Gallo has operated a facility at 5610 East Olive Avenue in Fresno to process grapes into wine since in or around 1950. In the course of the processing, Gallo has stored, used, or disposed of PFAS or PFAS products that have been or are threatened to be released from the facility and have caused or will cause actual or threatened contamination of soil, water, or other City property.

46.    Defendant California Natural Color is a division of Gallo, and a successor to San Joaquin Valley Concentrates. On information and belief, the City alleges the following: San Joaquin Valley Concentrates has operated a facility at 5631 East Olive Avenue in Fresno to process grapes into concentrates, extracts, and food colorings since in or around 1994. In the course of the processing, California Natural Color has stored, used, or disposed of PFAS or PFAS products that have been or are threatened to be released from the facility and have caused or will cause actual or threatened contamination of soil, water, or other City property.

47.    Defendant Mission Linen Supply ("Mission Linen") is a California corporation. On information and belief, the City alleges the following: Mission Linen has operated a facility at 2555 South Orange Avenue in Fresno since in or around 1993. Mission Linen uses the facility for cleaning textiles (including waterproof and flame-resistant textiles), disposable food containers, and for storing cleaning supplies that contain PFAS. Mission Linen has stored, used, or disposed of PFAS or PFAS products that have been or are threatened to be released from the facility and have caused or will cause actual or threatened contamination of soil, water, or other City property.

48.    Defendant Sandenvendo America, Inc. ("Sandenvendo") is a Delaware corporation registered to do business in California with its principal place of business in Dallas, Texas. Sandenvendo is a successor to the Vendo Company and the Vendorlator Manufacturing Company. On information and belief, the City alleges the following: The Vendo Company and the Vendorlator Manufacturing Company have operated facilities at 2494 South Railroad Avenue in Fresno from approximately 1938 to 1961 and 7209 North Ingram Avenue in Fresno from approximately 1948 to 2005. The Vendo Company and Vendorlator Manufacturing

COMPLAINT FOR DAMAGES AND OTHER RELIEF (NON-AFFF);
REQUEST FOR JURY TRIAL

Company have used the facilities for metal stripping, cleaning, plating, or finishing, painting, fabrication, and foam insulation injection. Sandenvendo has stored, used, or disposed of PFAS or PFAS products that have been or are threatened to be released from the facilities and have caused or will cause actual or threatened contamination of soil, water, or other City property.

49. Defendant Soex West Textile Recycling, USA, LLC ("Soex West") is a California limited liability company. On information and belief, the City alleges the following: Soex West has operated a facility at 2360 South Orange Avenue in Fresno since in or around 2008. Soex West has used the facility to collect, sort, and recycle textiles, including carpets and carpet padding, that contain PFAS. Soex West has stored, used, or disposed of PFAS or PFAS products that have been or are threatened to be released from the facility and have caused or will cause actual or threatened contamination of soil, water, or other City property.

50. Defendant Univar Solutions USA, LLC ("Univar") is a Washington corporation registered to do business in California with its principal place of business in Downers Grove, Illinois. On information and belief, the City alleges the following: Univar is a successor to Van Waters & Rogers ("VW&R"). Univar has operated a facility previously operated by VW&R at 4465 East Florence Avenue in Fresno since in or around 1994. Univar and VW&R have used the facility for the production of various chemicals or products that contain PFAS or use PFAS in the production of the finished products, including Freon, citric acid, and sodium hydroxide at the facility. Univar has stored, used, or disposed of PFAS or PFAS products that have been or are threatened to be released from the facility and have caused or will cause actual or threatened contamination of soil, water, or other City property.

**PFAS User Defendants: Metal Strippers, Cleaners, Platers, or Finishers**

51. PFAS products have been used by metal strippers, cleaners, platers, or finishers since the mid-1950s. A primary purpose of that use is to control hexavalent chromium emissions. The use of PFAS products in this industry includes as fume- or mist-suppressing agents, surfactants, or wetting agents. Studies show process wastewater from chrome plating contains PFAS. In addition to chrome strippers, cleaners, platers, or finishers, nickel, cadmium, lead, and

13

COMPLAINT FOR DAMAGES AND OTHER RELIEF (NON-AFFF);
REQUEST FOR JURY TRIAL

copper strippers, cleaners, platers, or finishers have used PFAS.

52.   Defendant B&T Custom Polishing ("B&T") is a California business. On information and belief, the City alleges the following: B&T has operated metal stripping, cleaning, plating, or finishing facilities at 4573 East Harvey Avenue and 1338 North Jackson Avenue in Fresno that have used one or more PFAS products, including as fume- or mist-suppressing agents, surfactants, or wetting agents. B&T has stored, used, or disposed of PFAS or PFAS products that have been or are threatened to be released from the facilities and have caused or will cause actual or threatened contamination of soil, water, or other City property.

53.   Defendant Blast Tech Because Rust Never Sleeps ("Blast Tech") is a California corporation. On information and belief, Blast Tech has operated a metal stripping, cleaning, plating, or finishing facility at 1451 North Whitney Avenue in Fresno that has used one or more PFAS products, including as fume- or mist-suppressing agents, surfactants, or wetting agents. Blast Tech has stored, used, or disposed of PFAS or PFAS products that have been or are threatened to be released from the facility and have caused or will cause actual or threatened contamination of soil, water, or other City property.

54.   Defendant California Chrome, LLC ("California Chrome") was a California limited liability company. On information and belief, the City alleges the following: California Chrome operated metal stripping, cleaning, plating, or finishing facilities at 220 Broadway Street and 1911 South Van Ness Avenue in Fresno that used one or more PFAS products, including as fume- or mist-suppressing agents, surfactants, or wetting agents. California Chrome has stored, used, or disposed of PFAS or PFAS products that have been or are threatened to be released from the facilities and have caused or will cause actual or threatened contamination of soil, water, or other City property.

55.   Defendant Clovis Specialty Plating is a California business. On information and belief, the City alleges the following: Clovis Specialty Plating has operated a metal stripping, cleaning, plating, or finishing facility at 1366 North Sierra Vista Avenue in Fresno that used one or more PFAS products, including as fume- or mist-suppressing agents, surfactants, or wetting

14

COMPLAINT FOR DAMAGES AND OTHER RELIEF (NON-AFFF);
REQUEST FOR JURY TRIAL

agents. Clovis Specialty Plating has stored, used, or disposed of PFAS or PFAS products that have been or are threatened to be released from the facility and have caused or will cause actual or threatened contamination of soil, water, or other City property.

56.     Defendant Commercial Electro Plating, Inc. ("Commercial Electro Plating") is a California corporation. On information and belief, the City alleges the following: Commercial Electro Plating has operated a metal stripping, cleaning, plating, or finishing facility at 1937 South Cherry Avenue in Fresno that used one or more PFAS products, including as fume- or mist-suppressing agents, surfactants, or wetting agents. Commercial Electro Plating has stored, used, or disposed of PFAS or PFAS products that have been or are threatened to be released from the facility and have caused or will cause actual or threatened contamination of soil, water, or other City property.

57.     Defendant Fresno Chrome Plating, Inc. ("Fresno Chrome Plating") was a California corporation, suspended in 1995. On information and belief, the City alleges the following: Fresno Chrome Plating has operated a metal stripping, cleaning, plating, or finishing facility at 4627 North Bendel Avenue in Fresno that used one or more PFAS products, including as fume- or mist-suppressing agents, surfactants, or wetting agents. Fresno Chrome Plating has stored, used, or disposed of PFAS or PFAS products that have been or are threatened to be released from the facility and have caused or will cause actual or threatened contamination of soil, water, or other City property.

58.     Defendant King Industrial Hard Chrome, Inc. ("King Industrial") is a California corporation. On information and belief, the City alleges the following: King Industrial has operated a metal stripping, cleaning, plating, or finishing facility at 1259 South Channing Avenue in Fresno that used one or more PFAS products, including as fume- or mist-suppressing agents, surfactants, or wetting agents. King Industrial has stored, used, or disposed of PFAS or PFAS products that have been or are threatened to be released from the facility and have caused or will cause actual or threatened contamination of soil, water, or other City property.

59.     Defendant Meclec, Inc. ("Meclec") was a California corporation. On information

15

COMPLAINT FOR DAMAGES AND OTHER RELIEF (NON-AFFF);
REQUEST FOR JURY TRIAL

and belief, the City alleges the following: Meclec operated a metal stripping, cleaning, plating, or finishing facility at 1956 South Orange Avenue in Fresno that used one or more PFAS products, including as fume- or mist-suppressing agents, surfactants, or wetting agents. Meclec has stored, used, or disposed of PFAS or PFAS products that have been or are threatened to be released from the facility and have caused or will cause actual or threatened contamination of soil, water, or other City property.

60.    Defendant Meclec Metal Finishing, Inc. ("Meclec Metal Finishing") is a California corporation. On information and belief, the City alleges the following: Meclec Metal Finishing has operated a metal stripping, cleaning, plating, or finishing facility at 1956 South Orange Avenue in Fresno that used one or more PFAS products, including as fume- or mist-suppressing agents, surfactants, or wetting agents. Meclec Metal Finishing has stored, used, or disposed of PFAS or PFAS products that have been or are threatened to be released from the facility and have caused or will cause actual or threatened contamination of soil, water, or other City property.

61.    Defendant New Age Metal Finishing, LLC ("New Age Metal") is a California limited liability company. On information and belief, the City alleges the following: New Age Metal has operated a metal stripping, cleaning, plating, or finishing facility at 2169 North Pleasant Avenue in Fresno that used one or more PFAS products, including as fume- or mist-suppressing agents, surfactants, or wetting agents. New Age Metal has stored, used, or disposed of PFAS or PFAS products that have been or are threatened to be released from the facility and have caused or will cause actual or threatened contamination of soil, water, or other City property.

62.    Defendant Pacific Coast Anodizing, Inc. ("Pacific Coast Anodizing") was a California corporation until it was dissolved in 2018. On information and belief, the City alleges the following: Pacific Coast Anodizing operated a metal stripping, cleaning, plating, or finishing facility at 1616 West Pine Avenue in Fresno that used one or more PFAS products, including as fume- or mist-suppressing agents, surfactants, or wetting agents. Pacific Coast Anodizing has

16

stored, used, or disposed of PFAS or PFAS products that have been or are threatened to be released from the facility and have caused or will cause actual or threatened contamination of soil, water, or other City property.

63. Defendant Rutter Armey, Inc. ("Rutter Armey") is a California corporation. On information and belief, the City alleges the following: Rutter Armey has operated a metal stripping, cleaning, plating, or finishing facility at 2684 South Cherry Avenue in Fresno that used one or more PFAS products, including as fume- or mist-suppressing agents, surfactants, or wetting agents. Rutter Armey has stored, used, or disposed of PFAS or PFAS products that have been or are threatened to be released from the facility and have caused or will cause actual or threatened contamination of soil, water, or other City property.

64. Defendant Tank Construction and Engineering, Inc. ("Tank Construction") was a California corporation until it was suspended in 2024. On information and belief, the City alleges the following: Tank Construction operated a metal stripping, cleaning, plating, or finishing facility at 4752 East Carmen Avenue in Fresno that used one or more PFAS products, including as fume- or mist-suppressing agents, surfactants, or wetting agents. Meclec has stored, used, or disposed of PFAS or PFAS products that have been or are threatened to be released from the facility and have caused or will cause actual or threatened contamination of soil, water, or other City property.

65. Defendant Tarver Coatings, Inc. ("Tarver Coatings") was a California corporation that merged into Tempest Technology Corporation, a California corporation, in 2007. On information and belief, the City alleges the following: Tarver Coatings operated a metal stripping, cleaning, plating, or finishing facility at 5374 North Barcus Avenue in Fresno that used one or more PFAS products, including as fume- or mist-suppressing agents, surfactants, or wetting agents. Tarver Coatings has stored, used, or disposed of PFAS or PFAS products that have been or are threatened to be released from the facility and have caused or will cause actual or threatened contamination of soil, water, or other City property.

66. Defendant Tempest Technology Corporation ("Tempest") is a California

17

COMPLAINT FOR DAMAGES AND OTHER RELIEF (NON-AFFF);
REQUEST FOR JURY TRIAL

corporation into which Tarver Coatings was merged in 2007. On information and belief, the City alleges the following: Tempest or its predecessor have operated a metal stripping, cleaning, plating, or finishing facility at 5374 North Barcus Avenue in Fresno that used one or more PFAS products, including as fume- or mist-suppressing agents, surfactants, or wetting agents. Tempest has stored, used, or disposed of PFAS or PFAS products that have been or are threatened to be released from the facility and have caused or will cause actual or threatened contamination of soil, water, or other City property.

67. Defendant Valley Chrome Plating, Inc. ("Valley Chrome") is a California corporation. On information and belief, the City alleges the following: Valley Chrome has operated metal stripping, cleaning, plating, or finishing facilities at 1366 and 1380 North Sierra Vista in Fresno that used one or more PFAS products, including as fume- or mist-suppressing agents, surfactants, or wetting agents. Valley Chrome has stored, used, or disposed of PFAS or PFAS products that have been or are threatened to be released from the facilities and have caused or will cause actual or threatened contamination of soil, water, or other City property.

68. Defendant Valley Metal Finishing, Inc. ("Valley Metal") is a California corporation. On information and belief, the City alleges the following: Valley Metal has operated metal stripping, cleaning, plating, or finishing facility at 733 G Street in Fresno that used one or more PFAS products, including as fume- or mist-suppressing agents, surfactants, or wetting agents. Valley Metal has stored, used, or disposed of PFAS or PFAS products that have been or are threatened to be released from the facilities and have caused or will cause actual or threatened contamination of soil, water, or other City property.

69. Defendant Western Chrome, Ltd. ("Western Chrome") is a California corporation. On information and belief, the City alleges the following: Western Chrome has operated a metal stripping, cleaning, plating, or finishing facility at 2306 East McKinley Avenue in Fresno that used one or more PFAS products, including as fume- or mist-suppressing agents, surfactants, or wetting agents. Western Chrome has stored, used, or disposed of PFAS or PFAS products that have been or are threatened to be released from the facilities and have caused or will cause actual

18

COMPLAINT FOR DAMAGES AND OTHER RELIEF (NON-AFFF);
REQUEST FOR JURY TRIAL

or threatened contamination of soil, water, or other City property.

**DOE Defendants**

70. The City is ignorant of the true names and/or capacities of Defendants sued herein under the fictitious names DOES 201 through 300, inclusive.

71. The City alleges, on information and belief, that the named Defendants and DOE Defendants (hereafter "Defendants" or singularly "Defendant") were each legally responsible for or committed one or more tortious, wrongful, or unlawful acts or omissions alleged in this Complaint and, in doing so, acted in the capacity of aider, abettor, joint venturer, partner, agent, alter ego, principal, successor, successor in interest, surviving corporation, controller, licensee, licensor, patent holder, or indemnitor of one or more of the other Defendants.

72. To the extent an act or omission of a Defendant is alleged in this Complaint, the City alleges the officers, directors, agents, employees, or representatives of such Defendant committed or authorized such act or omission, or failed to adequately direct, supervise, or control their employees while engaged in the management, direction, operation, or control of the affairs of such Defendants, and did so within the scope of their duties, employment, or agency.

73. All references herein to Defendants include predecessors, predecessors in interest, successors, successors in interest, parents, subsidiaries, affiliates, or divisions of the Defendant.

### DISCLAIMERS OF FEDERAL/AFFF CLAIMS

74. The City asserts no federal cause of action and seeks no relief under federal statutes or laws. The City disclaims all federal causes of action.

75. The City makes no claim in this action that AFFF caused or contributed to the actual or threatened contamination alleged in this Complaint. The City disclaims, in this action, all potential claims arising from federal facilities, including military installations. The City brings this action against Defendants in their private capacities as designers, manufacturers, marketers, distributors, storers, sellers, users, or disposers of non-AFFF PFAS or non-AFFF PFAS products.

///

19

COMPLAINT FOR DAMAGES AND OTHER RELIEF (NON-AFFF);
REQUEST FOR JURY TRIAL

## THE CITY OPTED OUT OF THE AFFF MDL SETTLEMENTS INVOLVING 3M AND THE DUPONT DEFENDANTS

76.     3M and the DuPont Defendants have settled putative class-action claims related to AFFF PFAS or PFAS products in the federal multi-district litigation ("MDL") entitled *In re: Aqueous Film-Forming Foams Products Liability Litigation,* MDL No. 2:18-mn-2873-RMG (D. S.C.) ("AFFF MDL").

77.     The City makes no claim in this action for AFFF, and the City opted out of the 3M and DuPont Defendants settlements in the AFFF MDL. The Notice Administrator for the 3M and DuPont Defendants settlements in the AFFF MDL has confirmed that the City has opted out of those settlements. No party, including 3M and the DuPont Defendants, objected to the City opting out of the AFFF MDL settlements. The City retains all of its legal rights to pursue 3M and the DuPont Defendants for non-AFFF (and AFFF) PFAS contamination.

## JURISDICTION AND VENUE

78.     This action is brought under the laws of the State of California.

79.     Complete diversity does not exist between the City and Defendants. Some Defendants are incorporated in California or have their principal place of business in California.

80.     The City has authority to act to protect human health and the environment, comply with regulatory standards, or otherwise respond to PFAS in soil, water, or other City property. This Court has jurisdiction over Defendants for reasons including the following: Defendants are or were incorporated in or registered to do business in California; Defendants transacted sufficient business to establish sufficient minimum contacts in the State of California; Defendants otherwise availed themselves of the California market through the design, manufacture, marketing, distribution, storage, sale, use, or disposal of PFAS or PFAS products so as to establish minimum contacts and render the exercise of jurisdiction over Defendants by the State of California consistent with traditional notions of fair play and substantial justice.

81.     Venue is proper in this Court because the City is the Plaintiff, the City is located in Fresno County, and Defendants' PFAS has contaminated soil, water, or other City property.

20

COMPLAINT FOR DAMAGES AND OTHER RELIEF (NON-AFFF);
REQUEST FOR JURY TRIAL

## FIRST CAUSE OF ACTION
### (Strict Products Liability – PFAS Manufacturer Defendants; PFAS Distributor Defendants)

82. Plaintiff realleges the preceding paragraphs as though fully set forth herein.

83. PFAS Manufacturer Defendants' or PFAS Distributor Defendants' PFAS or PFAS products were or are defective for reasons including the following:

(a) They did not perform as safely as an ordinary consumer would expect when used or misused in an intended or reasonably foreseeable manner.

(b) Their failure to perform safely was a substantial factor in causing actual or threatened contamination of soil, water, or other City property.

84. PFAS Manufacturer Defendants' or PFAS Distributor Defendants' PFAS or PFAS products were or are defective for reasons including the following:

(a) They had one or more potential risks that were known or knowable in light of the scientific knowledge that was generally accepted in the scientific community at the time of their design, manufacture, marketing, distribution, storage, sale, use, or disposal.

(b) The potential risks presented a substantial danger when the PFAS or PFAS products were used or misused in an intended or reasonably foreseeable way.

(c) Ordinary consumers would not have recognized the potential risks.

(d) Defendants failed to adequately warn of the potential risks.

(e) The lack of sufficient warning was a substantial factor in causing actual or threatened contamination of soil, water, or other City property.

85. PFAS compounds and certain PFAS products are fungible, so it may not be possible to identify the PFAS Manufacturer Defendant or PFAS Distributor Defendant responsible for PFAS in soil, water, or other City property.

86. The PFAS Manufacturer Defendants or PFAS Distributor Defendants control a substantial share of the market for PFAS incorporated into non-AFFF products and are jointly and severally liable for the contamination alleged in this Complaint.

87. Concert of action liability attaches to the PFAS Manufacturer Defendants or

21

COMPLAINT FOR DAMAGES AND OTHER RELIEF (NON-AFFF);
REQUEST FOR JURY TRIAL

PFAS Distributor Defendants, each of which participated in a common plan to further the acts or omissions alleged in this Complaint, and each of which committed the acts or omissions alleged in this Complaint to advance a common plan to promote the sale of PFAS or PFAS products.

88.     Enterprise liability attaches to the PFAS Manufacturer Defendants or PFAS Distributor Defendants, each of which placed one or more defective products into the stream of commerce.

89.     The PFAS Manufacturer Defendants or PFAS Distributor Defendants committed the acts or omissions alleged in this Complaint with malice, fraud, or oppression.

90.     The PFAS Manufacturer Defendants or PFAS Distributor Defendants intentionally concealed the risks of their PFAS or PFAS products.

91.     Each PFAS Manufacturer Defendant or PFAS Distributor Defendant made one or more public statements asserting PFAS or PFAS products would not threaten human health or the environment after they knew or should have known those statements had been contradicted by scientific evidence.

92.     The PFAS Manufacturer Defendants or PFAS Distributor Defendants minimized or purported to rebut scientific evidence demonstrating PFAS could or would threaten human health or the environment when used in an intended or reasonably foreseeable way.

93.     The PFAS Manufacturer Defendants or PFAS Distributor Defendants did not test PFAS as thoroughly as they could or should have, or did not publicly report the results of their testing, to avoid disclosing the threat from PFAS to human health or the environment.

94.     Each act or omission of PFAS Manufacturer Defendants or PFAS Distributor Defendants alleged in this Complaint was reprehensible, despicable, and performed to promote sales of PFAS and PFAS products. PFAS Manufacturer Defendants or PFAS Distributor Defendants knew it was substantially certain their acts or omissions alleged in this Complaint would threaten human health or the environment, and they committed those acts or omissions with conscious disregard of the health or safety of others.

95.     The City prays for an award of punitive damages in an amount sufficient to

22

punish each PFAS Manufacturer Defendant or PFAS Distributor Defendant and deter similar conduct in the future. After the completion of additional investigation and discovery, the City may seek leave to amend this Complaint to allege a claim for punitive damages against additional Defendants, as warranted by the facts.

## SECOND CAUSE OF ACTION
**(HSAA (Health & Saf. Code, § 78000, et seq.) – PFAS User Defendants)**

96.    Plaintiff realleges the preceding paragraphs as though fully set forth herein.

97.    Section 78145 of the California Health & Safety Code defines a person who is liable under the Carpenter-Presley-Tanner Hazardous Substance Account Act ("HSAA").

98.    Each PFAS User Defendant is a liable person under the HSAA because they are either the current owner or operator of one or more facilities that have released or are releasing PFAS to soil, water, or other City property, or they were an owner or operator of such facilities at the time a disposal of PFAS or a PFAS product occurred.

99.    As a proximate result of the disposal, release, or threatened release of PFAS at PFAS User Defendants' facilities, the City has incurred or will incur response or corrective action costs that are necessary and consistent with the NCP.

100.    PFAS User Defendants are strictly and categorically liable for the City's responsive or corrective action costs under California Health & Safety Code section 79665 and 79670.

101.    Notice of commencement of this action has been given to the Director of Toxic Substances Control pursuant to California Health & Safety Code section 79670, subdivision (c).

## THIRD CAUSE OF ACTION
**(Declaratory Relief (Code Civ. Proc., § 1060) – All Defendants)**

102.    Plaintiff realleges the preceding paragraphs as though fully set forth herein.

103.    Defendants knew or should have known that PFAS or PFAS products, when designed, manufactured, marketed, distributed, stored, sold, used, or disposed of in a foreseeable manner, posed unreasonable or excessive risks to human health or the environment.

104.    Defendants intentionally, recklessly, or negligently failed to properly design,

23

COMPLAINT FOR DAMAGES AND OTHER RELIEF (NON-AFFF);
REQUEST FOR JURY TRIAL

manufacture, market, distribute, store, sell, use, or dispose of PFAS or PFAS products, such that Defendants created substantial and unreasonable threats to human health or the environment.

105. The City must act to respond to Defendants' PFAS contamination, which will cause the City to incur substantial costs within the jurisdiction of this Court.

106. Defendants have failed to reimburse the City for those costs and deny liability or responsibility for the costs the City has incurred or will incur.

107. An actual controversy exists concerning who is responsible for abating actual or threatened contamination or pollution of soil, water, or other City property.

108. To resolve this controversy, the City seeks an adjudication of the respective rights and obligations of the parties and all other relief necessary to provide full relief to the City, including a declaration of the City's right to recover, and each Defendant's obligation to pay, the City's costs of responding to actual or threatened PFAS contamination.

## FOURTH CAUSE OF ACTION
### (Negligence – All Defendants)

109. Plaintiff realleges the preceding paragraphs as though fully set forth herein.

110. Defendants had a duty to use due care in the design, manufacture, marketing, distribution, storage, sale, use, or disposal of PFAS or PFAS products.

111. Defendants had a duty to use due care in evaluating PFAS or PFAS products to determine their risks to human health or the environment when they designed, manufactured, marketed, distributed, stored, sold, used, or disposed of PFAS or PFAS products.

112. Defendants knew or reasonably should have known PFAS or PFAS products threatened human health or the environment or were dangerous or likely to be dangerous when used or misused in a reasonably foreseeable manner, and Defendants knew or reasonably should have known users of PFAS or PFAS products would not realize the danger.

113. Defendants had a duty to take adequate safety measures, including providing adequate warnings, to reduce or avoid exposing others to a foreseeable risk of harm.

114. Defendants have breached their duties by, inter alia, intentionally, recklessly, or

24

COMPLAINT FOR DAMAGES AND OTHER RELIEF (NON-AFFF);
REQUEST FOR JURY TRIAL

negligently failing to prevent, detect, contain, evaluate, monitor, clean up, abate, or otherwise respond to spills, leaks, discharges, or releases of PFAS or PFAS products.

115.    Defendants failed to use the amount of care a reasonable person would have used in similar circumstances when designing, manufacturing, marketing, distributing, storing, selling, using, or disposing of PFAS or PFAS products, including by failing to warn others who might be harmed by spills, leaks, discharges, or releases of PFAS or PFAS products.

116.    Defendants' negligence was a substantial factor in causing PFAS to contaminate soil, water, or other City property.

117.    Through the acts or omissions alleged in this Complaint, Defendants contaminated soil, water, or other City property, including during the past three years.

118.    Through the acts or omissions alleged in this Complaint, the City has incurred or will incur costs to protect human health or the environment, comply with regulatory standards, or otherwise respond to PFAS in soil, water, or other City property.

119.    The City has sustained or will sustain harm, including loss of use of property, impaired water rights, or response costs, in an amount within the jurisdiction of this Court.

120.    Defendants' negligence has resulted in incremental PFAS contamination of soil, water, or other City property over a period of time in a pattern of reasonably frequent and similar acts that justifies treating the acts as an indivisible course of conduct actionable in its entirety.

121.    Defendants negligently, carelessly, or recklessly engaged in the acts or omissions alleged in this Complaint, warranting an award of compensatory damages.

122.    Defendants engaged in the acts or omissions alleged in this Complaint with malice, fraud, or oppression, justifying an award of punitive damages.

### FIFTH CAUSE OF ACTION
#### (Nuisance – All Defendants)

123.    Plaintiff realleges the preceding paragraphs as though fully set forth herein.

124.    Defendants' acts or omissions alleged in this Complaint have caused or contributed to PFAS contamination of soil, water, or other City property and created or assisted

25

in the creation of a nuisance, including as defined in Civil Code sections 3479, 3480, or 3481, Health & Safety Code section 5410, and Water Code section 13050.

125. The City owns, leases, occupies, or controls property or property rights or interests affected by the nuisance.

126. Through the acts or omissions alleged in this Complaint, Defendants created or assisted in the creation of an unpermitted condition of pollution or contamination that is harmful to health, indecent or offensive to the senses, obstructs the free use of property so as to interfere with the comfortable enjoyment of life or property, or unlawfully obstructs the beneficial use of soil, water, or other City property, including public drinking water supplies.

127. Defendants intentionally, recklessly, or negligently created or assisted in the creation of a nuisance through acts or omissions including using or encouraging the use of PFAS in the design, manufacture, marketing, distribution, storage, sale, use, or disposal of PFAS products in a manner that would contaminate soil, water, or other City property.

128. The nuisance caused by each Defendant's conduct is continuing and has substantially interfered with the City's use of soil, water, or other City property.

129. Defendants' conduct would annoy or disturb an ordinary person.

130. The City has not consented and does not consent to the nuisance.

131. Defendants' conduct was a substantial factor in causing harm to the City.

132. The seriousness of the harm to the City outweighs the public benefit or social utility of Defendants' conduct.

133. The nuisance has affected a substantial number of people at the same time, but the harm to the City is different from the type of harm suffered by the general public.

134. The nuisance created by each Defendant is continuing and abatable. The City has engaged or will engage in abatement or treatment of the nuisance.

135. As a direct and proximate result of the nuisance, the City is entitled to the compensatory or punitive damages prayed for in this Complaint or to other appropriate relief the City may elect at trial, including an order requiring Defendants to abate the nuisance.

COMPLAINT FOR DAMAGES AND OTHER RELIEF (NON-AFFF);
REQUEST FOR JURY TRIAL

## SIXTH CAUSE OF ACTION
### (Trespass – All Defendants)

136.    Plaintiff realleges the preceding paragraphs as though fully set forth herein.

137.    The City owns, leases, occupies, or controls property or property rights or interests that Defendants have intentionally, recklessly, or negligently caused PFAS to trespass upon without the City's permission.

138.    The trespass is continuing and the City has sustained and will sustain harm, including by incurring costs to respond to actual or threatened PFAS contamination to protect human health and the environment, comply with regulatory standards, or otherwise respond to PFAS in soil, water, or other City property.

139.    Defendants' trespass is a substantial factor in causing the City harm.

140.    Defendants' trespass is expected to continue until abated. Defendants' PFAS has varied over time and can be reasonably abated. The City has abated or will abate the trespass.

141.    As a direct and proximate result of the trespass, the City is entitled to the compensatory or punitive damages prayed for in this Complaint or to other appropriate relief the City may elect at trial, including an order requiring Defendants to abate the trespass.

## SEVENTH CAUSE OF ACTION
### (Fraudulent/Voidable Transfer – the DuPont Defendants)

142.    This cause of action is brought under the former California Uniform Fraudulent Transfer Act ("UFTA") and superseding California Uniform Voidable Transactions Act ("UVTA"), California Civil Code section 3494, et seq.

**Actual Fraudulent Transfer – Old DuPont and Chemours Co.**

143.    Plaintiff realleges the preceding paragraphs as though fully set forth herein.

144.    The July 2015 "spinoff" of Chemours Co. from Old DuPont caused Chemours Co. to transfer assets to Old DuPont (the "Chemours Transfers"), including a $3.9 billion dividend, while assuming substantial liabilities (the "Assumed Liabilities") from Old DuPont.

145.    The transactions giving effect to the Chemours Transfers and Assumed Liabilities were made for the benefit of Old DuPont.

27

COMPLAINT FOR DAMAGES AND OTHER RELIEF (NON-AFFF);
REQUEST FOR JURY TRIAL

146. From the development of the transactions giving effect to the Chemours Transfers and Assumed Liabilities to the spinoff of Chemours Co., Old DuPont controlled Chemours Co.

147. Old DuPont or Chemours Co. entered into the transactions giving effect to the Chemours Transfers and Assumed Liabilities to hinder, delay, or defraud creditors like the City, and those transactions were a substantial factor in causing the City harm.

148. Pursuant to the UFTA or UVTA, the City is entitled to void the Chemours Transfers, recover property or value transferred in the Chemours Transfers from Chemours Co. to Old DuPont, enjoin Old DuPont or Chemours Co. from distributing, transferring, capitalizing, or otherwise disposing of proceeds from the sale of all business lines, segments, divisions, or other assets involved in the Chemours Transfers, or establish a constructive trust to hold any such proceeds for the benefit of the City.

149. The City reserves such other rights or remedies under the UFTA or UVTA as may be necessary to compensate the City for the harm suffered as alleged in this Complaint.

**Constructive Fraudulent Transfer – Old DuPont and Chemours Co.**

150. Plaintiff realleges the preceding paragraphs as though fully set forth herein.

151. Chemours Co. did not receive reasonably equivalent value from Old DuPont in exchange for the Chemours Transfers or Assumed Liabilities.

152. The transactions giving effect to the Chemours Transfers and Assumed Liabilities were made for the benefit of Old DuPont.

153. From the development of the transactions giving effect to the Chemours Transfers and Assumed Liabilities to the spinoff of Chemours Co., Old DuPont controlled Chemours Co.

154. Old DuPont and Chemours Co. engaged in the transactions giving effect to the Chemours Transfers and Assumed Liabilities when Chemours Co. was engaged or soon to be engaged in a business for which its assets were unreasonably small.

155. Chemours Co. was insolvent, in contemplation of insolvency, or became insolvent as a result of the Chemours Transfers and Assumed Liabilities.

156. When the Chemours Transfers were made and the Assumed Liabilities were

28

assumed, Old DuPont or Chemours Co. intended to incur or believed or should have believed that Chemours Co. would incur debts beyond Chemours Co.'s ability to pay.

157.    The Chemours Transfers and Assumed Liabilities were a substantial factor in causing the City harm.

158.    Pursuant to the UFTA or UVTA, the City is entitled to void the Chemours Transfers, recover property or value transferred from Chemours Co. to Old DuPont in the Chemours Transfers, enjoin Old DuPont or Chemours Co. from distributing, transferring, capitalizing, or otherwise disposing of proceeds from the sale of all business lines, segments, divisions, or other assets involved in the Chemours Transfers, or establish a constructive trust to hold any such proceeds for the benefit of the City.

159.    The City reserves such other rights or remedies under the UFTA or UVTA as may be necessary to compensate the City for the harm suffered as alleged in this Complaint.

**Actual Fraudulent Transfer – Old DuPont, New DuPont, and Corteva**

160.    Plaintiff realleges the preceding paragraphs as though fully set forth herein.

161.    Old DuPont sold or transferred, directly or indirectly, assets or business lines to Corteva or New DuPont (f/k/a DowDuPont) (the "Old DuPont Transfers").

162.    The Old DuPont Transfers were made for the benefit of New DuPont or Corteva.

163.    When the Old DuPont Transfers were made, New DuPont controlled Old DuPont or Corteva.

164.    Old DuPont, New DuPont, or Corteva entered into the transactions giving effect to the Old DuPont Transfers with the intent to hinder, delay, or defraud creditors like the City, and those transactions were a substantial factor in causing the City harm.

165.    Pursuant to the UFTA or UVTA, the City is entitled to void the Old DuPont Transfers, recover property or value transferred from Old DuPont to New DuPont or Corteva, enjoin New DuPont and Corteva from distributing, transferring, capitalizing, or otherwise disposing of any proceeds from the sale of any business lines, segments, divisions, or other assets involved in the Old Dupont Transfers that formerly belonged to Old DuPont, and establish a

29

COMPLAINT FOR DAMAGES AND OTHER RELIEF (NON-AFFF);
REQUEST FOR JURY TRIAL

constructive trust to hold any such proceeds for the benefit of the City.

166.    The City reserves such other rights or remedies under the UFTA or UVTA as may be necessary to compensate the City for the harm suffered as alleged in this Complaint.

**Constructive Fraudulent Transfer – Old DuPont, New DuPont, and Corteva**

167.    Plaintiff realleges the preceding paragraphs as though fully set forth herein.

168.    Old DuPont did not receive reasonably equivalent value from New DuPont or Corteva in exchange for the Old DuPont Transfers.

169.    The Old DuPont Transfers were made for the benefit of New DuPont or Corteva.

170.    When the Old DuPont Transfers were made, New DuPont controlled Old DuPont or Corteva.

171.    Old DuPont made the Old DuPont Transfers when it was engaged or soon to be engaged in a business for which its assets were unreasonably small.

172.    Old DuPont was insolvent, in contemplation of insolvency, or became insolvent as a result of the Old DuPont Transfers.

173.    When the Old DuPont Transfers were made, Old DuPont intended to incur or believed or reasonably should have believed it would incur debts beyond its ability to pay.

174.    The Old DuPont Transfers were a substantial factor in causing the City harm.

175.    Pursuant to the UFTA or UVTA, the City is entitled to void the Old DuPont Transfers, recover property or value transferred from Old DuPont to New DuPont or Corteva, enjoin New DuPont and Corteva from distributing, transferring, capitalizing, or otherwise disposing of any proceeds from the sale of any business lines, segments, divisions, or other assets involved in the Old Dupont Transfers that formerly belonged to Old DuPont, and establish a constructive trust to hold any such proceeds for the benefit of the City.

176.    The City reserves such other rights or remedies under the UFTA or UVTA as may be necessary to compensate the City for the harm suffered as alleged in this Complaint.

## PRAYER FOR RELIEF

WHEREFORE, the City respectfully requests that the Court enter judgment in favor of

30

the City and against Defendants, jointly and severally, for:

1.    Compensatory damages according to proof;

2.    Response costs according to proof;

3.    Punitive damages in an amount sufficient to punish the PFAS Manufacturer Defendants and PFAS Distributor Defendants and deter the PFAS Manufacturer Defendants and PFAS Distributor Defendants from committing the same or similar acts in the future;

4.    Injunctive relief as appropriate to abate the nuisance or trespass;

5.    Voiding of the fraudulent transfer of assets between the DuPont Defendants, recovery of all property or value fraudulently transferred to the harm of the City, and all other appropriate relief permitted by law related to the fraudulent transfers;

6.    Costs of suit incurred herein, attorney fees and prejudgment interest to the extent permitted by law; and

7.    Such other further relief as the City may elect or the Court may deem just and proper.

## REQUEST FOR JURY TRIAL

Plaintiff respectfully requests a jury trial and determination in this action.

Dated: October 31, 2025

**MILLER & AXLINE**
A Professional Corporation

By:_____
JUSTIN MASSEY
Attorneys for Plaintiff
City of Fresno

31

COMPLAINT FOR DAMAGES AND OTHER RELIEF (NON-AFFF);
REQUEST FOR JURY TRIAL

# Alternative Dispute Resolution Information Packet

## Overview & History

Alternative Dispute Resolution (ADR) is an increasingly popular option that allows people to resolve disputes outside of court in a cooperative manner. ADR can be faster, cheaper, and less stressful than going to court. Most importantly, the use of ADR can provide greater satisfaction with the way disputes are resolved.

ADR has been gradually evolving within the Fresno Superior Court for the past several years. In 1999 the Court recognized a need for greater public access to dispute resolution for cases and established an ADR Department. This department assists parties by providing information regarding ADR processes and services.

## *Civil Standing Order Regarding ADR:*

In 2006, a Case Management Conference (CMC) Standing Order 07-0628, was implemented requiring parties in general civil cases filed in Fresno County Superior Court to participate in ADR prior to trial. This order and supporting ADR forms can be found on the court's website, www.fresno.courts.ca.gov under the "Forms," section. Please note, participation in ADR does not eliminate the need for proper and timely filing of case documents, such as an Answer to Complaint.

## Disputes

ADR techniques have been used successfully in a variety of disputes involving individuals, small and large businesses, government, and the general public. Various types of ADR processes are available depending on the nature of the dispute. Many types of conflict often lend themselves to an alternative and informal method of dispute resolution. Some examples of disputes often settled by ADR include **but are not limited to:**

- Business disputes- contracts, partnerships
- Property / Land use disputes- property transfers, boundaries, easements
- Family disputes – divorce, property, custody, visitation, support issues
- Consumer / Collection disputes- repairs, services, warranties, debts
- Employment disputes- employment contracts, terminations
- Landlord / Tenant disputes- evictions, rent, repairs, security deposits
- Neighborhood disputes / Relational disputes or other civil or personal conflicts
- Personal Injury / Insurance disputes- accidents, coverage, liability

## Processes:

The most common forms of ADR are Mediation, Arbitration, and Case Evaluation. In most ADR processes, a trained, impartial person decides or helps the parties reach resolution of their dispute together. The persons are neutrals who are normally chosen by the disputing parties or by the court. Neutrals can often

help parties resolve disputes without having to go to court or trial. Below is a description of commonly used processes:

## Mediation

In mediation, the mediator (a neutral) assists the parties in reaching a mutually acceptable resolution of their dispute. Unlike lawsuits or some other types of ADR, the mediator **does not** decide how the dispute will be resolved, the parties do. It is a cooperative process guided by the mediator to create an agreement that addresses each person's interests. Mediation often leads to better communication between the parties and lasting resolutions. It is particularly effective when parties have a continuing relationship, such as neighbors or businesses. It also is very effective where personal feelings are getting in the way of a resolution. Mediation normally gives the parties a chance to express their concerns in a voluntary and confidential process while working towards a resolution. **The mediation process is commonly used for most civil case types and can provide the greatest level of flexibility for parties.**

## Arbitration

In arbitration, the arbitrator (a neutral) reviews evidence, hears arguments, and **makes a decision (award) to resolve the dispute.** This is very different from mediation whereby the mediator helps the parties reach their own resolution. Arbitration is generally quicker, less expensive and less formal than a lawsuit. An arbitrator can often hear a case in a matter of hours rather than days in a trial. This is because the evidence can be submitted by documents rather than by testimony.

1. **Binding Arbitration**: Usually conducted by a private arbitrator, this process takes place outside of the Court. "Binding" means that the arbitrator's decision (award) is final and there will not be a trial or an opportunity to appeal the decision.

2. **Non-Binding Arbitration:** May be ordered through the Court (Judicial Arbitration) or conducted privately. In this process, the arbitrator's decision is "not binding." This means that if a party is not satisfied with the decision of the arbitrator, they can file a request for trial with the court within a specified time. However, depending on the process if that party does not receive a more favorable result at trial, they may have to pay a penalty.

## Case Evaluation

In case evaluation, the evaluator (a neutral) gives an opinion on the strengths and weaknesses of each party's evidence and arguments. Each party gets a chance to present their case and hear the other side. This may lead to a settlement, or at the least, help the parties prepare to resolve the dispute later. Case evaluation, like mediation, can come early in the dispute and save time and money. The case evaluation process is most effective when parties have an unrealistic view of the dispute, need outside assistance in determining case value, and have technical or procedural questions to be worked out. This process is sometimes used in combination with mediation or arbitration.

## ADR Agreements:

Agreements reached through ADR are normally put into writing and can become binding contracts that are enforceable in court. Parties may choose to seek the advice of an attorney as to your legal rights and other matters relating to the dispute before finalizing any agreement.

## ADR Process Selection & Information:

There are several other types of ADR. Some of these include Conciliation, Settlement Conference, Fact Finding, Mini-Trial, Victim Offender Conferencing, and Summary Jury Trial. Sometimes parties will try a combination of ADR types. The important thing is to find the type of ADR that is most likely to resolve the dispute.  Contact the ADR department staff for assistance for additional information and referral to services appropriate for each specific case.

## Advantages & Disadvantages of ADR:

### Advantages

- **Often quicker than going to trial**, a dispute may be resolved in a matter or days or weeks instead of months or years.
- **Often less expensive**, saving the litigants court costs, attorney's fees and expert fees.
- **Permits more participation and empowerment**, allowing the parties the opportunity to tell their side of the story and have more control over the outcome.
- **Allows for flexibility** in choice of ADR processes and resolution of the dispute.
- **Fosters cooperation** by allowing the parties to work together with the neutral to resolve the dispute and mutually agree to a remedy.
- **Often less stressful** than litigation. Most people have reported a high degree of satisfaction with ADR.

Because of these advantages, many parties choose ADR to resolve disputes instead of filing a lawsuit. Even after a lawsuit has been filed, the court can refer the dispute to a neutral before the lawsuit becomes costly. ADR is even used to resolve disputes after trial, when the result is appealed.

### Disadvantages

- ADR may not be suitable for every dispute.
- If the ADR process is binding, the parties normally give up most court protections, including a decision by a judge or jury under formal rules of evidence and procedure, and review for legal error by an appellate court.
- ADR may not be effective if it takes place before the parties have sufficient information to resolve the dispute.
- The neutral may charge a fee for his or her services. If the dispute is not resolved through ADR, the parties may then have to face the usual and traditional costs, such as attorney's fees and expert fees.
  - Lawsuits must be brought within specified periods of time, known as Statutes of Limitations. Parties must be careful not to let a Statute of Limitation run while a dispute is in an ADR process

## Neutral Selection:

The selection of a neutral is an important decision. Please note that currently there is no legal requirement that the neutral be licensed or hold any particular certificate. However, many programs and the Court have established qualification requirements and standards of conduct for their neutral panels.

# *Mediation Services Offered by Fresno County Superior Court*

## *Mediation Practitioner Panel:*

Fresno County Superior Court, Alternative Dispute Resolution (ADR) Department maintains a fee-for-service Mediation Panel as a public service for court litigants and the community. Those listed have met the Court's eligibility requirements and have agreed to abide by the Court's professional standards of conduct in order to participate as a panel member. The panel list can be found on the Court's website under the Alternative Dispute Resolution link, **www.fresno.courts.ca.gov/alternative_dispute_resolution/**

## Free / Low Cost ADR Service Options

For cases involving self-represented litigants or those unable to afford a private mediator, the court contracts with the following organization to provide **free or low cost** mediation services through Dispute Resolution Program Act (DRPA) funding.

- **Better Business Bureau Mediation Center**- *This organization provides mediation for family law property disputes, small claims, landlord / tenant, business, consumer/ merchant, harassment, and neighborhood disputes.* For more information about their services go to **www.bbb.org/central-california-inland-empire/programs-services/mediation-services**

  *2600 W. Shaw Lane*
  *Fresno, CA 93711*
  *559.256.6300 (phone)*
  *800.675.8118, ext. 300 (toll free)*

**For more information, go to** www.fresno.courts.ca.gov/alternative_dispute_resolution **or contact:**

Mari Henson, Administrator
1130 "O" Street, Fresno, CA. 93724
TEL (559) 457-1908, FAX (559) 457-1691
mhenson@fresno.courts.ca.gov

Carlos Guzman, Asst. Administrator
1130 "O" Street, Fresno. CA. 93724
TEL (559) 457-1909, FAX (559) 457-1691
cguzman@fresno.courts.ca.gov

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, state bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| TELEPHONE NO:                    FAX NO:<br>ATTORNEY FOR *(Name):* | |

**SUPERIOR COURT OF CALIFORNIA • COUNTY OF FRESNO**
1130 "O" Street
Fresno, California 93724-0002
(559) 457-1909

| PLAINTIFF/PETITIONER:<br><br>DEFENDANT/RESPONDENT: | |
|---|---|
| **STIPULATION REGARDING ALTERNATIVE DISPUTE RESOLUTION (ADR)** | CASE NUMBER: |

The parties stipulate that they will engage in the following Alternative Dispute Resolution (ADR) process:

☐ Mediation    ☐ Arbitration    ☐ Neutral Case Evaluation    ☐ Other _____

The parties further stipulate that _____ has been selected as the mediator/arbitrator/neutral.

Address: _____

City, State, Zip _____

Phone Number: ( ) _____

The parties acknowledge that they shall engage in some form of Alternative Dispute Resolution (ADR). The selected ADR process must be completed prior to the Mandatory Settlement Conference. Unless excused by the Court upon a timely showing of good cause by written declaration, failure to complete ADR may result in the cancellation of a Mandatory Settlement Conference and Court-imposed sanctions.

Parties will be required to file an **Alternative Dispute Resolution (ADR) Status Report at least 10 court days prior** to the Mandatory Settlement Conference. Failure to do so may result in sanctions at an Order to Show Cause (OSC) hearing set by the court.

| Date | Type or Print Name | Signature of Party or Attorney for Party |
|---|---|---|
| Date | Type or Print Name | Signature of Party or Attorney for Party |
| Date | Type or Print Name | Signature of Party or Attorney for Party |
| Date | Type or Print Name | Signature of Party or Attorney for Party |

☐ Additional signatures on Stipulation Regarding Alternative Dispute Resolution (ADR) Attachment

TADR-01  R08-20            STIPULATION REGARDING ALTERNATIVE DISPUTE RESOLUTION (ADR)
MANDATORY

**SUPERIOR COURT OF CALIFORNIA • COUNTY OF FRESNO**
1130 "O" Street
Fresno, California 93724-0002
(559) 457-1909

*FOR COURT USE ONLY*

CASE TITLE:

**STIPULATION REGARDING ALTERNATIVE DISPUTE RESOLUTION (ADR) ATTACHMENT**

CASE NUMBER:

| Date | Type or Print Name | Signature of Party or Attorney for Party |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

TADR-02 R11-11    STIPULATION REGARDING ALTERNATIVE DISPUTE RESOLUTION (ADR) ATTACHMENT
**MANDATORY**                                                                                     Page 1 of 1

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, state bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| TELEPHONE NO:                     FAX NO:<br>ATTORNEY FOR *(Name):* | |

**SUPERIOR COURT OF CALIFORNIA • COUNTY OF FRESNO**
1130 "O" Street
Fresno, California 93724-0002
(559) 457-1909

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| **ALTERNATIVE DISPUTE RESOLUTION STATUS REPORT (ADR)** | CASE NUMBER: |
|---|---|

Type of Civil Case:
☐ Personal Injury – Property Damage/Auto  ☐ Personal Injury – Property Damage  ☐ Contract  ☐ Other _____

Date Complaint Filed: _____

Amount in controversy:
☐ $0 to $25,000   ☐ $25,000 to $50,000   ☐ $50,000 to $100,000   ☐ Over $100,000.00 (specify) _____

Date of Alternative Dispute Resolution (ADR) Conference: _____

Name, address, and telephone number of person who conducted the Alternative Dispute Resolution (ADR) Conference:

_____

_____

Case resolved by Alternative Dispute Resolution:

☐ Yes   (proper filing of a **Notice of Settlement** or **Dismissal** form is required by clerk's office)

☐ No    Reason: _____

Alternative Dispute Resolution process concluded:

☐ Yes

☐ No    Reason for delay: _____
         Next scheduled hearing date: _____

Type of resolution process used:
☐ Mediation   ☐ Arbitration   ☐ Neutral Case Evaluation   ☐ Other (specify): _____

Case was resolved by:
☐ Direct Result of ADR Process   ☐ Indirect Result of ADR Process   ☐ Resolution was unrelated to ADR Process

If case went through ADR and resolved, estimate the closest dollar amount that was saved in attorney fees and/or expert witness fees by participating in the process.
☐ $0   ☐ $250   ☐ $500   ☐ $750   ☐ $1,000   ☐ More than $1,000 (specify) _____

If case went through ADR and did not resolve, estimate the closest dollar amount of additional costs incurred due to participation in the ADR process.
☐ $0   ☐ $250   ☐ $500   ☐ $750   ☐ $1,000   ☐ More than $1,000 (specify) _____

TADR-03 R11-011        **ALTERNATIVE DISPUTE RESOLUTION STATUS REPORT (ADR)**        Page 1 of 2
**MANDATORY**

Case Number:

Check the closest estimated number of court days you saved in motions, hearings, conferences, trials, etc. as a direct result of this case being referred to this dispute resolution process:

☐ 0 Days          ☐ 1 Day          ☐ More than 1 day (specify) _____

If the dispute resolution process caused an increase in court time for this case, please check the estimated number of additional court days:

☐ 0 Days          ☐ 1 Day          ☐ More than 1 day (specify) _____

I would be willing to use the dispute resolution process again:

☐ Yes          ☐ No

Please provide any additional comments below regarding your experience with the ADR process:

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

TADR-03  R11-11          **ALTERNATIVE  DISPUTE RESOLUTION STATUS REPORT (ADR)**          Page 2 of 2
**MANDATORY**

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Justin Massey, SBN 229697<br>Miller & Axline, 1050 Fulton Ave, Ste 100, Sacramento, CA 95825<br><br>TELEPHONE NO.: (916) 488-6688        FAX NO.: .<br>EMAIL ADDRESS: jmassey@milleraxline.com<br>ATTORNEY FOR (Name): Plaintiff City of Fresno | E-FILED<br>11/18/2025 11:42 AM<br>Superior Court of California<br>County of Fresno<br>By: Yazmin Colin, Deputy |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF FRESNO
STREET ADDRESS: 1130 O Street
MAILING ADDRESS:
CITY AND ZIP CODE: Fresno, CA 93721
BRANCH NAME: B.F. Sisk Courthouse

CASE NAME:
CITY OF FRESNO v. 3M COMPANY, ET AL.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| [x] Unlimited | [ ] Limited | [ ] Counter  [ ] Joinder | | 25CECG05176 |
| (Amount demanded exceeds $35,000) | (Amount demanded is $35,000 or less) | Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | JUDGE:<br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[x] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint (not specified above) (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition (not specified above) (43)

2. This case [x] is [ ] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [x] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. [x] monetary b. [x] nonmonetary; declaratory or injunctive relief c. [x] punitive
4. Number of causes of action (specify): Seven
5. This case [ ] is [x] is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: October 31, 2025

Justin Massey
_____          _____
(TYPE OR PRINT NAME)                              (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.        Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. January 1, 2024] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courts.ca.gov |

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET                                            CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*
**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
Asbestos Property Damage
Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
Medical Malpractice– Physicians & Surgeons
Other Professional Health Care Malpractice
Other PI/PD/WD (23)
Premises Liability (e.g., slip and fall)
Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
Intentional Infliction of Emotional Distress
Negligent Infliction of Emotional Distress
Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
Legal Malpractice
Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
Negligent Breach of Contract/ Warranty
Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
Collection Case–Seller Plaintiff
Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
Auto Subrogation
Other Coverage
Other Contract (37)
Contractual Fraud
Other Contract Dispute
**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
Writ of Possession of Real Property
Mortgage Foreclosure
Quiet Title
Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
Writ–Administrative Mandamus
Writ–Mandamus on Limited Court Case Matter
Writ–Other Limited Court Case Review
Other Judicial Review (39)
Review of Health Officer Order
Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
Abstract of Judgment (Out of County)
Confession of Judgment *(non-domestic relations)*
Sister State Judgment
Administrative Agency Award *(not unpaid taxes)*
Petition/Certification of Entry of Judgment on Unpaid Taxes
Other Enforcement of Judgment Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
Declaratory Relief Only
Injunctive Relief Only *(non-harassment)*
Mechanics Lien
Other Commercial Complaint Case *(non-tort/non-complex)*
Other Civil Complaint *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
Civil Harassment
Workplace Violence
Elder/Dependent Adult Abuse
Election Contest
Petition for Name Change
Petition for Relief From Late Claim
Other Civil Petition

---

CM-010 [Rev. January 1, 2024]                    **CIVIL CASE COVER SHEET**                                    Page 2 of 2

| SUPERIOR COURT OF CALIFORNIA • COUNTY OF FRESNO<br>Civil Unlimited Department, Central Division<br>1130 O Street<br>Fresno, California 93721<br>(559) 457-1900 | *FOR COURT USE ONLY*<br><br>11/17/2025 |
|---|---|
| TITLE OF CASE:<br><br>City of Fresno vs. 3M Company / COMPLEX | |
| NOTICE OF CASE MANAGEMENT CONFERENCE AND ASSIGNMENT OF<br>JUDGE FOR ALL PURPOSES | CASE NUMBER:<br>25CECG05176 |

To All Parties and their Attorneys of Record:    City of Fresno
No Known Address

> This case has been assigned to **Kristi Culver Kapetan**, Judge for **all purposes**.
> All future hearings will be scheduled before this assigned judge, in **Department 502**

You are required to appear at a Case Management Conference on **03/18/2026** at **3:28 PM** in **Department 502** of the Court located at **1130 O Street, Fresno, California.**

You must comply with the requirements set forth in Chapter 2 of the Superior Court of Fresno County, Local Rules. You must file a Case Management Conference Statement at least 15 calendar days before the conference (Cal. Rules of Court, rule 3.725(a).)

Failure to appear at the conference or to comply with these rules may result in imposition of sanctions, waiver of jury trial, or other adverse consequences.

**Defendants:** Appearance at the Case Management Conference does not excuse you from having to file your response in proper legal form within 30 days after the summons is served on you. Failure to file a response in a timely manner may result in adverse consequences, including a default judgment being entered against you.
If you do not have an attorney and wish to retain one, there are attorney referral services, legal aid offices, and private practice attorneys in the Fresno area (most may be found on the internet or the local phone book).

**An Order Regarding Remote Appearance (RA-020) is not required for Case Management Conferences unless so ordered by the court. For any other appearances, a party must submit a request for remote appearance to be reviewed.**

**DECLARATION**

I declare under penalty of perjury under the laws of the State of California that I gave a copy of the **Notice of Case Management and Assignment of Judge for All Purposes** to the person who presented this case for filing.

Date:   **11/17/2025**           Clerk, by   **April Hoffman**           , Deputy