**FILED**

**Apr 02, 2026**

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

**UNITED STATES JUDICIAL PANEL**
**on**
**MULTIDISTRICT LITIGATION**

IN RE: AQUEOUS FILM-FORMING FOAMS
PRODUCTS LIABILITY LITIGATION                          MDL No. 2873

**TRANSFER ORDER**

**Before the Panel**:**\***  Plaintiffs in the actions listed on Schedule A move under Panel Rule 7.1 to vacate our orders that conditionally transferred their respective actions to the District of South Carolina for inclusion in MDL No. 2873.  Defendant 3M Company opposes all the motions to vacate.  Several other defendants in the *City of Fresno* action also oppose the motion to vacate as to that action.[1]

After considering the argument of counsel, we find that the actions listed on Schedule A involve common questions of fact with the actions transferred to MDL No. 2873, and that transfer under 28 U.S.C. § 1407 will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation.  In our order centralizing this litigation, we held that the District of South Carolina was an appropriate Section 1407 forum for actions in which plaintiffs allege that aqueous film-forming foams (AFFFs) used at airports, military bases, or certain industrial locations caused the release of per- or polyfluoroalkyl substances (PFAS) into local groundwater and contaminated drinking water supplies.  The MDL actions share factual questions concerning the use and storage of AFFFs; the toxicity of PFAS and the effects of these substances on human health; and these substances' chemical properties and propensity to migrate in groundwater supplies.  *See In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 357 F. Supp. 3d 1391, 1394 (J.P.M.L. 2018).

Plaintiffs in the four Alabama actions listed on Schedule A are public water providers.  Plaintiffs in three of these actions allege that their drinking water supplies have been contaminated by PFAS originating from carpet and textile manufacturing in and around Dalton, Georgia (which allegedly impacted the Coosa River), as well as metal plating businesses in Alabama.  Plaintiff in the fourth action (the City of Irondale) alleges that its water supply has been contaminated by various chemical and electroplating facilities in and near Irondale.  Plaintiffs in all four actions explicitly disavow claims relating to AFFF use or disposal.  We previously denied motions to transfer *Shelby County* and *City of Irondale*.  *See* Order Denying Transfer at 1–2, MDL No. 2873

---

\* Judge David C. Norton did not participate in the decision of this matter.

[1] Commercial Electro Plating, Inc., Meclec Metal Finishing, Inc., New Age Metal Finishing, LLC, Valley Chrome Plating, Inc., Valley Metal Finishing, Inc., and SureTec, Inc.

- 2 -

(J.P.M.L. Apr. 3, 2025), ECF No. 3419 (denying transfer of *Shelby County*); Order Denying Transfer at 1–3, MDL No. 2873 (J.P.M.L. Feb. 12, 2025), ECF No. 3260 (denying transfer of *City of Irondale*).

We conclude that transfer of the four Alabama actions, including *Shelby County* and *City of Irondale*, is now warranted because the water supplies at issue in those actions are already at issue in actions pending in the MDL. 3M has identified one or more personal injury actions in the MDL in which a plaintiff alleges that they drank water from the Alabama water providers, that PFAS in the water injured them, and that this PFAS stemmed from AFFF use or disposal.[2] The Panel previously has concluded that transfer is justified where such overlap exists. *See, e.g.*, Transfer Order at 1–2 (*City of Opelika*), MDL No. 2873 (J.P.M.L. Oct. 9, 2025), ECF No. 3869 (transferring *City of Opelika* because water supply was also at issue in action in the MDL); Transfer Order at 2–3 (*City of Savannah*), MDL No. 2873 (J.P.M.L. June 2, 2025), ECF No. 3536 (same).

In opposition to transfer, plaintiffs argue that their actions do not involve AFFF claims but are wholly focused on non-AFFF sources of PFAS, such as the carpet industry in Dalton, Georgia. Plaintiffs assert that the MDL personal injury plaintiffs' failure to identify a particular contaminated water source (as opposed to a contaminated water supplier) renders the MDL complaints "conclusory" and does create a sufficiently "substantial and concrete" overlap necessary to transfer otherwise non-AFFF actions. *See* Order Vacating CTO at 2–3, MDL No. 2873 (J.P.M.L. Aug. 3, 2022), ECF No. 1511 (declining to transfer *State of New Hampshire* where the asserted AFFF overlap was not "substantial and concrete"). However, it is sufficient for our purposes that 3M has identified plaintiffs in the MDL who allege that they consumed water provided by these water providers and that this water allegedly was contaminated from PFAS stemming from AFFF use or disposal. We see a clear overlap among the Alabama actions and actions pending in the MDL and, as a consequence, efficiencies will be gained from centralized pretrial proceedings and the elimination of duplicative discovery.

We decline plaintiffs' suggestion to create a "*de minimus*" exception for transfer. We have not previously required a complete overlap in allegedly impacted wells and water sources, but only that the same water supply is alleged to be contaminated by AFFF. *See, e.g.*, Transfer Order at 2 (*City of Savannah*), MDL No. 2873 (J.P.M.L. June 2, 2025), ECF No. 3536 ("[T]ransfer is warranted because the *water* supply at issue in *City of Savannah* is already at issue in an action in the MDL.") (emphasis added). We likewise decline the invitation to characterize the MDL plaintiffs' allegations as "conclusory." Doing so inevitably would require that we "engage in a merits review of the complaints based on the amount of detail of plaintiffs' respective pre-suit investigations." Transfer Order at 3, MDL No. 2873 (J.P.M.L. June 5, 2023), ECF No. 1927.

---

[2] *See Abarca v. 3M Co.*, C.A. No. 2:25-12448 (D.S.C.) (Shelby County); *Atkins v. 3M Co.*, C.A. No. 2:25-12220 (D.S.C.) (Canton); *Arnett v. 3M Co.*, C.A. No. 2:25-12175 (D.S.C.) (Irondale); *Adams v. AGC Chems. Ams., Inc.*, C.A. No. 2:25-11944 (D.S.C.) (Irondale); *Abrams, Jr. v. AGC Chems. Ams., Inc.*, C.A. No. 2:25-11938 (D.S.C.) (Shelby County); *Bridges v. AGC Chems. Ams., Inc.*, C.A. No. 2:25-11847 (D.S.C.) (Canton); *Conway v. 3M Co.*, C.A. No. 2:25-10062 (D.S.C.) (Coosa Valley).

- 3 -

Plaintiffs further suggest that transfer of these actions would effectively transform MDL No. 2873 into a broader PFAS MDL.  Our intent, both now and when we created this MDL, is that this litigation should be limited to actions asserting claims for harm caused by AFFF manufacture, use, or disposal, and we have endeavored to maintain this line in the sand.  *See, e.g.*, Order Denying Transfer at 2–3, MDL No. 2873 (J.P.M.L. Dec. 11, 2025), ECF No. 4062 (declining to expand scope of MDL to include non-AFFF direct exposure claims by firefighters).  But even under the terms we have set, this is an expansive MDL that encompasses many, if not most, water providers across the country.  This merely reflects the nature and scope of PFAS contamination and AFFF use.  As a prerequisite to transfer to this MDL, we still require that complaints contain AFFF claims or, if the actions do not raise AFFF claims on their face, that movants satisfy a "significant burden" to persuade us "that transfer is appropriate and will not undermine the efficient progress of the MDL."  Order Denying Transfer at 2, MDL No. 2873 (J.P.M.L. Dec. 18, 2019), ECF No. 541.  One way of meeting that burden is to demonstrate that the action involves overlapping water supplies, such that the actions will entail duplicative discovery and pretrial motion practice.  *See, e.g.*, Transfer Order at 1–2, MDL No. 2873 (J.P.M.L. Oct. 4, 2024), ECF No. 2938 (transferring *Long* where plaintiffs alleged PFAS contamination of their properties from groundwater also at issue in municipalities' MDL suits alleging AFFF contamination).  3M has met that burden here, and transfer will not alter the scope of this AFFF litigation.

The Alabama plaintiffs also argue that transfer would result in inefficiencies and delay because the current MDL case management orders do not cover cases involving municipal water-systems that have opted out of the significant settlements reached in the MDL.  Even so, discovery is underway that likely will be relevant to these actions, such as the bellwether product-identification discovery.  The transferee judge has neither suggested remand of any particular category of cases nor indicated that any category of cases should not be transferred to the MDL.  In any event, "[t]ransfer of an action is appropriate if it furthers the expeditious resolution of the litigation taken as a whole, even if some parties to the action might experience inconvenience or delay."  *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, MDL No. 2873, 2021 WL 755083, at *2 (J.P.M.L. Feb. 4, 2021) (citing *In re Watson Fentanyl Patch Prods. Liab. Litig.*, 883 F. Supp. 2d 1350, 1351–52 (J.P.M.L. 2012) ("[W]e look to the overall convenience of the parties and witnesses, not just those of a single plaintiff or defendant in isolation.")).

Finally, plaintiffs argue that transfer of the Alabama actions is inappropriate because they have been stayed pending the Eleventh Circuit's decision in *Town of Pine Hill, Alabama v. 3M Company*, No. 25-10746, which addresses a federal officer removal question relevant to all four Alabama actions.  Plaintiff in *City of Irondale* additionally argues that it should not be transferred because of its participation in the appeal (it has joined an amici brief).  Ultimately, these arguments are not persuasive.  Pending remand motions generally do not present an impediment to transfer.  *See, e.g.*, *In re Prudential Ins. Co. of Am. Sales Pracs. Litig.*, 170 F. Supp. 2d 1346, 1347–48 (J.P.M.L. 2001) ("[R]emand motions can be presented to and decided by the transferee judge.").  Plaintiffs express concern that, if transferred to the MDL, the Eleventh Circuit's ruling in the *Pine Hill* appeal may not be controlling.  But the Panel does not concern itself with applicable circuit law when considering transfer under Section 1407.  *See, e.g.*, *In re Gen. Motors Class E Stock Buyout Sec. Litig.*, 696 F. Supp. 1546, 1547 (J.P.M.L. 1988) ("When determining whether to transfer an action under Section 1407, however, it is not the business of the Panel to consider what law the transferee court might apply.").  Moreover, transfer will not interfere with the City of

- 4 -

Irondale's participation in the appeal.  It is joined in its amici brief by Colbert County and the Cities of Muscle Shoals, Opelika, and Savannah—all parties to actions the Panel already has transferred to MDL No. 2873.  *See* Amici Brief, *Town of Pine Hill v. 3M Co.*, No. 25-10746 (11th Cir. Aug. 26, 2025), Dkt. No. 26.

Turning to the *City of Fresno* action, this is another public water provider action in which plaintiff alleges that its water supply has been contaminated by PFAS originating from various non-AFFF industrial concerns (primarily local metal stripping and electroplating firms).  As with the Alabama cases, plaintiff expressly disavows claims relating to AFFF use or disposal.  And like the Alabama cases, 3M has identified multiple personal injury plaintiffs in eighteen personal injury actions pending in the MDL who allege they were exposed to AFFF-contaminated drinking water supplied by the City of Fresno.[3]

In opposition to transfer, the City asserts many of the same arguments as the Alabama plaintiffs, which fail for the reasons previously stated.  The City argues that *City of Fresno* is not an AFFF action but is focused on local non-AFFF industries.  The City contends that its claims are limited to 26 industrial locations some distance from the one well (Well 70) the City admits was contaminated by AFFF.  This narrow characterization of the action, however, is not consistent with the text of the complaint, which does not appear to be limited to specific wells, but rather to specific defendants.  *See* Compl. ¶¶ 1, 8–9, *City of Fresno v. 3M Co.*, C.A. No. 1:25-02057 (E.D. Cal. Dec. 29, 2025), ECF No. 1-1 (alleging PFAS contamination of "soil, water (surface water, groundwater, or drinking water wells), or other City property" and seeks recovery for contamination "in or around the City").  By seeking recovery for PFAS contamination throughout its system, the City's claims necessarily encompass a known AFFF-contaminated well.

As with the Alabama actions, the Panel's decisions in *City of Savannah* and *City of Opelika* are directly on point.  3M has identified multiple MDL personal injury plaintiffs who allege exposure to AFFF-contaminated drinking water through the City's water system.  Accordingly, there is likely to be duplicative discovery regarding the source of PFAS contamination in the City's water supply.  The City argues that transfer will not be convenient or efficient because of the large number of local defendants, but many cases in the MDL involve unique defendants.  Transfer of *City of Fresno* is warranted.

---

[3] *See Aaron v. 3M Co.*, C.A. No. 2:25-12192 (D.S.C.); *Abarca v. 3M Co.*, C.A. No. 2:25-12448 (D.S.C.); *Acosta v. 3M Co.*, C.A. No. 2:25-11940 (D.S.C.); *Adair v. AGC Chems. Ams., Inc.*, C.A. No. 2:25-12152 (D.S.C.); *Adams v. AGC Chems. Ams., Inc.*, C.A. No. 2:25-11944 (D.S.C.); *Adams v. AGC Chems. Ams., Inc.*, C.A. No. 2:25-11942 (D.S.C.); *Aguinaldo v. 3M Co.*, C.A. No. 2:25-12166 (D.S.C.); *Baker v. 3M Co.*, C.A. No. 2:24-00029 (D.S.C.); *Braithewaite v. AGC Chems. Ams., Inc.*, C.A. No. 2:25-11844 (D.S.C.); *Bridges v. AGC Chems. Ams., Inc.*, C.A. No. 2:25-11847 (D.S.C.); *Clayton v. AGC Chems. Ams., Inc.*, C.A. No. 2:25-11838 (D.S.C.); *Cruz v. AGC Chems. Ams., Inc.*, C.A. No. 2:25-12063 (D.S.C.); *De La Cruz v. 3M Co.*, C.A. No. 2:24-00030 (D.S.C.); *Infausto v. 3M Co.*, C.A. No. 2:23-06837 (D.S.C.); *Morales v. 3M Co.*, C.A. No. 2:24-00613 (D.S.C.); *Sifuentes v. 3M Co.*, C.A. No. 2:23-03429 (D.S.C.); *Vasquez v. 3M Co.*, C.A. No. 2:23-03431 (D.S.C.); *Yepez v. 3M Co.*, C.A. No. 2:23-05638 (D.S.C.).

- 5 -

The final motion to vacate concerns an action by the State of Maine. The State filed this "non-AFFF" action in Maine state court alongside its "AFFF" action. Both are directed to PFAS contamination of the State's groundwater, surface water, and other natural resources. The AFFF action was directed to AFFF manufacturers; the non-AFFF action was limited to 3M and DuPont (the principal manufacturers of PFAS) and explicitly disavowed any claims relating to AFFF use or disposal.

The AFFF action was removed to federal court and transferred to the MDL without opposition. The non-AFFF action was also removed, but the district court remanded it to state court, where it proceeded while the First Circuit heard an appeal of the remand order. During written discovery, the State identified more than 900 sites at issue. 3M removed the action again in September 2025, arguing that the State had identified sites where AFFF use was reported. On November 19, 2025, the First Circuit reversed the remand order, holding that the State's disavowal of AFFF claims did not obviate the need for the trial court to determine whether any particular site was contaminated by AFFF use, and thus that federal officer removal was appropriate. *See Maine v. 3M Co., Inc.*, 159 F.4th 129 (1st Cir. 2025).[4]

The State argues that transfer is inappropriate because this action does not raise AFFF claims. Since 3M's second removal of this action to federal court, the State has filed several "disclaimers" of liability for PFAS contamination at certain sites that 3M has identified as plausibly involving AFFF contamination. It also has sought leave to amend its complaint to remove any reference to the allegedly AFFF-contaminated sites. The State contends that these disclaimers and its proposed amended complaint remove any potential AFFF-issues from the case and eliminate the overlap the First Circuit identified when it reversed the remand order. The State also argues that discovery is well underway in the District of Maine, such that transfer would yield inefficiencies and delay.

The State's arguments are not convincing. 3M has identified numerous alleged contamination sites identified by the State in it written discovery responses that, 3M contends, involve AFFF contamination and are at issue in personal injury or water district actions pending in the MDL.[5] While the State has since disclaimed liability for these sites, its practice of filing a

---

[4] The First Circuit's decision resulted in two dockets for the same case: one (C.A. No. 25-453) when 3M removed the action in September 2025; and a second (C.A. No. 23-210) when the First Circuit remanded the case to the District of Maine following the appeal. The two dockets have since been consolidated and both are listed in Schedule A.

[5] In its brief, 3M identifies personal injury plaintiffs in more than twenty MDL actions who allege they were exposed to AFFF-contaminated water from sites identified by the State. *See Aldamuy v. 3M Co.*, C.A. No. 2:25-11800 (D.S.C.) (Calais Water Department); *Kirkland v. 3M Co.*, C.A. No. 2:25-11988 (D.S.C.) (Cold Spring Water Company); *Abner v. 3M Co.*, C.A. No. 2:25-11443 (D.S.C.) (Dexter Utility District); *Amaral v. 3M Co.*, C.A. No. 2:25-11478 (D.S.C.) (Dexter Utility District); *Best v. 3M Co.*, C.A. No. 2:25-11231 (D.S.C.) (Dexter Utility District); *Johnson v. 3M Co.*, C.A. No. 2:25-05904 (D.S.C.) (Gray Water District; Yarmouth Water District); *Abernathy v. 3M Co.*, C.A. No. 2:25-11875 (D.S.C.) (Greater Augusta Utility District); *Bowie v. 3M Co.*, C.A.

(continued…)

- 6 -

new disclaimer of liability every time 3M identifies an AFFF-contaminated site is not a practicable way of proceeding.  This action must either proceed as part of the MDL or separate from it, and the State's repetitive disclaimers, as well as its stated intent to continue disclaiming sites whenever AFFF is identified as a potential source of PFAS contamination, all strongly suggest that this action currently encompasses sites at which AFFF has been or will be identified.  Allowing this action to continue to proceed in this fashion is not tenable and will only result in delay and continuing confusion as to the scope of the action.

Furthermore, we share the First Circuit's concern regarding the State's attempt to split its AFFF and non-AFFF claims and contemplated that this action may be transferred to the MDL. *See Maine*, 159 F.4th at 131–32 ("Maine's efforts to have two courts answer the same questions must fail.").[6]  We likewise have transferred state actions where the state attempts to "split its claims into AFFF and non-AFFF complaints and thereby maintain an action outside the MDL."  Transfer Order at 4, MDL No. 2873 (J.P.M.L. June 7, 2021, ECF No. 1020 (transferring "non-AFFF" action by the State of Michigan).  *See also* Transfer Order at 2–3, MDL No. 2873 (J.P.M.L. June 5, 2023), ECF No. 1927 (transferring putative non-AFFF action by State of Illinois, despite disclaimer of AFFF claims, where complaint identified water supplies that were being litigated in the MDL).  The State points to the Panel's denial of transfer of *State of New Hampshire*, but there the state had "identified different contamination sites in each action," and 3M had not identified actions in

---

No. 2:25-04550 (D.S.C.) (Greater Augusta Utility District); *Hanna v. 3M Co.*, C.A. No. 2:23-04527 (D.S.C.) (Greater Augusta Utility District; Maine Water Company Skowhegan Division); *Ande v. 3M Co.*, C.A. No. 2:25-10293 (D.S.C.) (Greater Augusta Utility District); *Huhn v. 3M Co.*, C.A. No. 2:25-01045 (D.S.C.) (Greater Augusta Utility District); *Penninger v. 3M Co.*, C.A. No. 2:25-11183 (D.S.C.) (Greater Augusta Utility District); *Rios v. 3M Co.*, C.A. No. 2:23-04617 (D.S.C.) (Greater Augusta Utility District); *Earl v. Arkema, Inc.*, C.A. No. 2:24-04324 (D.S.C.) (Guilford-Sangerville Water District); *Moore v. 3M Co.*, C.A. No. 2:26-00076 (D.S.C.) (Hallowell Water District); *Willis v. 3M Co.*, C.A. No. 2:25-08671 (D.S.C.) (Harrison Water District); *Day v. 3M Co.*, C.A. No. 2:24-04292 (D.S.C.) (Lisbon Water District); *Krueger v. 3M Co.*, C.A. No. 2:24-05671 (D.S.C.) (Lisbon Water District); *Wilson-Zeigler v. 3M Co.*, C.A. No. 2:25-08819 (D.S.C.) (Lisbon Water District); *Athanas v. 3M Co.*, C.A. No. 2:25-12400 (D.S.C.) (Maine Water Company Skowhegan Division); *Degonza v. 3M Co.*, C.A. No. 2:25-13623 (D.S.C.) (Maine Water Company Skowhegan Division); *Walker v. 3M Co.*, C.A. No. 2:25-11308 (D.S.C.) (Newport Water District); and *Rich v. 3M Co.*, C.A. No. 2:21-01333 (D.S.C.) (Yarmouth Water District).

3M also identifies two water provider actions that it claims involve AFFF contamination of a site claimed by Maine in its "non-AFFF" action.  *See Kennebec Water Dist. v. 3M Co.*, C.A. No. 2:22-04164 (D.S.C.) (identifying China Lake as the source of plaintiff's drinking water); *Sanford Sewerage Dist. v. 3M Co.*, C.A. No. 2:25-01310 (D.S.C.) (alleging that plaintiff discharges AFFF-contaminated effluent into Mousam River).

[6] The State attempts to distinguish this discussion by the First Circuit as reflecting a concern about federalism.  But the only way the court could be concerned about the state and federal systems addressing the same PFAS contamination sources alleged in Maine is if there are two actions (*i.e.*, another federal action) that overlaps with the State's action.  This is precisely the overlap that merits transfer.

- 7 -

the MDL alleging AFFF contamination at the sites *New Hampshire* identified in its non-AFFF complaint.  Order Vacating CTO at 2, MDL No. 2873 (J.P.M.L. Aug. 3, 2022), ECF No. 1511.  In contrast here, 3M repeatedly has identified sites at issue in *State of Maine* that are at issue in actions pending in the MDL.  Our decision in *State of New Hampshire* is inapposite.

The State's argument regarding the progress of discovery in *State of Maine* is not well taken.  To date, the parties have only exchanged limited written discovery.  There have been no depositions and little motion practice.  There remains ample scope for coordination with discovery in the MDL, which involves numerous other state actions (including Maine's "AFFF" action).  While transfer may result in some delay for the State, transfer is nonetheless appropriate if it furthers the expeditious resolution of the litigation taken as a whole.  *See In re AFFF*, 2021 WL 755083, at *2.

Finally, the State echoes the Alabama and *City of Fresno* plaintiffs' argument that transfer would result in the creation of a PFAS MDL.  For the reasons we have explained, both with respect to those actions and *State of Maine*, transfer of this action will not expand the scope of the MDL.

IT IS THEREFORE ORDERED that the actions listed on Schedule A are transferred to the District of South Carolina and, with the consent of that court, assigned to the Honorable Richard M. Gergel for coordinated or consolidated pretrial proceedings.

PANEL ON MULTIDISTRICT LITIGATION

Karen K. Caldwell
Chair

Nathaniel M. Gorton          Matthew F. Kennelly
Roger T. Benitez             Dale A. Kimball
Madeline Cox Arleo



A TRUE COPY
ATTEST: ROBIN L. BLUME, CLERK

BY: 

DEPUTY CLERK

**IN RE: AQUEOUS FILM-FORMING FOAMS**
**PRODUCTS LIABILITY LITIGATION**                    MDL No. 2873


## SCHEDULE A


Middle District of Alabama

CITY OF CLANTON WATER WORKS AND SEWER BOARD v. 3M COMPANY,
     ET AL., C.A. No. 2:25−00751

Northern District of Alabama

SHELBY COUNTY, ALABAMA, ET AL. v. 3M COMPANY, ET AL.,
     C.A. No. 1:25−00112
COOSA VALLEY WATER SUPPLY DISTRICT, INC. v. 3M COMPANY,
     ET AL., C.A. No. 1:25−01931
CITY OF IRONDALE, ALABAMA v. 3M COMPANY, INC., ET AL.,
     C.A. No. 2:24−01327

Eastern District of California

CITY OF FRESNO v. 3M COMPANY, ET AL., C.A. No. 1:25−02057

District of Maine

STATE OF MAINE v. 3M COMPANY, ET AL., C.A. No. 2:23−00210
STATE OF MAINE v. 3M COMPANY, ET AL., C.A. No. 2:25−00453